

COPY

1  **MILSTEIN ADELMAN LLP**
   Gillian L. Wade, State Bar No. 229124
2  gwade@milsteinadelman.com
   M. Isaac Miller, State Bar No. 266459
3  imiller@milsteinadelman.com
   2800 Donald Douglas Loop North
4  Santa Monica, California 90405
   Telephone:   (310) 396-9600
5  Fax:         (310) 396-9635

6  Attorneys for Plaintiff,
   Arlene Cabral and the Proposed Class

7

8

9

10                UNITED STATES DISTRICT COURT

11                CENTRAL DISTRICT OF CALIFORNIA

12
   ARLEEN CABRAL, individually and on        ) CASE NO.: **5:12-cv-00085-MWF-OP**
13 behalf of all others similarly situated,  )
                                             )
14                                           ) **CLASS ACTION**
              Plaintiffs,                    )
15                                           ) **FIRST AMENDED COMPLAINT**
16        vs.                                )
                                             )  1. VIOLATION OF BUSINESS &
17                                           )     PROFESSIONS CODE § 17200, *et*
   SUPPLE, LLC, a Connecticut                )     *seq.* (UNFAIR AND
18 Corporation; and DOES 1 through 100,      )     FRAUDULENT PRONGS)
   inclusive,                                )  2. VIOLATION OF BUSINESS &
19                                           )     PROFESSIONS CODE § 17200, *et*
20                                           )     *seq.* (UNLAWFUL PRONGS)
              Defendants.                    )  3. VIOLATION OF BUSINESS &
21                                           )     PROFESSIONS CODE § 17500, *et*
22                                           )     *seq.*
                                             )  4. VIOLATION OF CALIFORNIA
23                                           )     CIVIL CODE § 1750, *et seq.*
                                             )     (Consumer Legal Remedies Act)
24                                           )
25                                           )
                                             )
26                                           ) **DEMAND FOR JURY TRIAL**
27                                           )

28

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

Plaintiff Arlene Cabral ("Plaintiff"), individually and on behalf of all other similarly situated purchasers of the Supple beverage (the "Class"), brings this complaint against Supple, LLC ("Defendant").   Plaintiff seeks certification of this matter as a class action.   Plaintiff, by and through her attorney, submits this First Amended Complaint ("FAC") against Defendant pursuant to the Court's July 2, 2012 order, and alleges as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  As set forth in detail in Defendant's removal papers and supplemental briefing, the aggregated claims of the individual class members exceed the sum value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the proposed plaintiff class, on the one hand, and Defendant, on the other, are citizens of different states.

2.     This Court has jurisdiction over Defendant because Defendant has sufficient minimum contacts in California, or otherwise intentionally avails itself of the markets within California, through promotion, sale, marketing and distribution of the Supple beverage in California, to render the exercise of jurisdiction by this Court proper and necessary.  Moreover, Defendant can be brought before this Court pursuant to California's "long-arm" jurisdictional statute.

3.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events and misrepresentations giving rise to Plaintiff's claims occurred in this District, Plaintiff resides in San Bernardino County, and Plaintiff purchased the subject product in San Bernardino County.

## NATURE OF THE ACTION

4.     Defendant markets, distributes and sells the Supple Beverage ("Supple"). In its marketing and advertising for Supple, including infomercials, websites and product labeling, Defendant made and continues to make numerous false and

FIRST AMENDED COMPLAINT

misleading claims regarding the uses and benefits of the product.

5.     In particular, Defendant claims that the "clinically proven effective" ingredients in Supple are fast-acting and effectively treat arthritis.  The product, however, does not work as advertised.

6.     Defendant deceives and misleads consumers by producing and selling a worthless product.  The marketing scheme executed by Defendant deceives consumers by making outrageous and false claims about the uses and benefits of Supple in order to drive sales of the product, including the claim in its infomercial that "extensive research confirms arthritis can be healed."  In reality, Supple does not have the ability to "help you realize complete and fast relief from joint suffering" nor can it "help you regain full mobility."

7.     Plaintiff is informed and believes that the foundation of Defendant's marketing scheme consists of infomercials featuring CEO Peter Apatow ("Apatow") and at least one website that is owned and controlled by Defendant and multiple affiliate websites Defendant controls.  Defendant's principle website is SuppleBodies.com.

8.     Some of the false and misleading claims that characterize the marketing and advertising for Supple include the following:

- Supple's key ingredients "can halt, reverse and completely heal the causes of joint pain"
- Supple's key ingredients have "disease-modifying qualities" and are "disease-modifying for arthritis pain"
- Supple "stops the vicious cycle of cartilage breakdown and degeneration"
- Supple "rebuilds your joints" and it actually "helps you heal"
- "Evidence-Based Solutions for Joint Problems"
- "Clinically Proven Effective Ingredients"

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

2

- • "Comfort, Lubricate & Rebuild Your Joints"
- • "Supple can help you realize amazing and fast relief from joint suffering and can help you regain full mobility"
- • Supple gives you the "Healthiest Joints"

In fact, there is no scientific support for the claims asserted by Defendant, and, as such, the claims constitute false and deceptive advertising

9.      In the course of manufacturing, marketing, distributing, and selling Supple, Defendant has committed and continues to commit illicit business practices in direct violation of: (1) California's Unfair Competition Law ("UCL,"), *Business & Professions Code* § 17200, *et seq.*; (2) California's False Advertising Law ("FAL"), *Business & Professions Code* § 17500, *et seq.*; and (3) California's Consumer Legal Remedies Act ("CLRA"), *Civil Code* § 1750, *et seq.*

10.      Defendant makes false and misleading representations through internet and television advertising and product labeling, communicating the persistent, material message that Supple will relieve arthritic joint pain.  By utilizing these misrepresentations in the marketing and advertising for Supple, Defendant has violated applicable California consumer protection statutes, including but not limited to the UCL, FAL, and CLRA.

11.      Through such false and misleading claims about the purported uses and benefits of Supple, Defendants have wrongfully induced thousands of California consumers into shelling out a whopping $94.95 (plus processing and handling) for Supple, which is nothing more than a fruit-flavored juice, incapable of healing or comforting arthritis pain.  In doing so, Defendants have reaped millions of dollars in ill-gotten gains.

12.      This action seeks to put an end to Defendant's unfair, fraudulent and unlawful business practices.

## **PARTIES**

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

FIRST AMENDED COMPLAINT

13.     Plaintiff is, and at all times relevant hereto was, an individual residing in San Bernardino County, California.  Plaintiff, who suffers from arthritis, purchased a 7-week supply of Supple in 2009.  *See* Ex. A (Supple Beverages Order Invoice – Arlene Cabral).  In doing so, she relied upon the advertising and other promotional material which were prepared and approved by Defendant and its agents and disseminated through its labeling and national advertising media, containing the misrepresentations alleged herein.  If Plaintiff had known Supple cannot effectively treat arthritis, and would do absolutely nothing to relieve her joint pain, she would not have purchased the product.

14.     Defendant Supple, LLC ("Defendant") is a corporation organized and existing under the laws of the State of Connecticut, with its principle place of business located at 355 Byrd Avenue, Neenah, WI 54956.  Defendant, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of California.  Defendant is the registered trademark owner and distributor of Supple, and is the company that created and/or authorized the false, misleading and deceptive advertisements and packaging for Supple.

15.     The true names and capacities, whether individual, corporate, associate or otherwise of certain manufacturers, distributors and/or their alter egos sued herein as DOES 1 through 100 inclusive are presently unknown to Plaintiff who therefore sue these Defendants by fictitious names.  Plaintiff will seek leave of this Court to amend the FAC to show their true names and capacities when the same have been ascertained.  Plaintiff is informed and believes and based thereon alleges that DOES 1 through 100 were authorized to do and did business in this District.  Plaintiff is further informed and believes and based thereon alleges that DOES 1 through 100 were and/or are, in some manner or way, responsible for and liable to Plaintiff for the events, happenings, and damages hereinafter set forth below.

16.     Plaintiff is informed and believes and based thereon alleges that at all

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

FIRST AMENDED COMPLAINT

1    times relevant herein each of the Defendants was the agent, servant, employee,

2    subsidiary, affiliate, partner, assignee, successor-in-interest, alter ego or other

3    representative of each of the remaining Defendants and was acting in such capacity in

4    doing the things herein complained of and alleged.

5        17.    In committing the wrongful acts alleged herein, Defendants planned and

6    participated in and furthered a common scheme by means of false, misleading,

7    deceptive and fraudulent representations to induce members of the public to purchase

8    Supple.

9        18.    Defendant, upon becoming involved with the manufacture, distribution,

10   advertising, marketing and sale of Supple, knew or should have known that the claims

11   about Supple and, in particular, the claims that Supple has the ability to "Comfort,

12   Lubricate & Rebuild Your Joints," and that Supple's fast-acting ingredients are

13   "clinically proven" effective to treat arthritis, were false, deceptive and misleading.

14   Indeed, since the first time that Supple was advertised, Defendant has been aware that

15   it does not possess the requisite competent and reliable scientific evidence to

16   substantiate its bold claims about the purported uses and benefits of Supple.

17   Defendant affirmatively misrepresented, and continues to misrepresent, the uses and

18   benefits of Supple in order to convince the public to purchase and use the product,

19   resulting in millions of dollars in profits to Defendant, and significant detriment to the

20   consuming public.

## CLASS ACTION ALLEGATIONS

22   19.    Plaintiff brings this action on her own behalf and on behalf of all other

23   persons similarly situated.   The Class which Plaintiff seeks to represent is:

**All persons residing in the State of California who purchased**

**Supple for personal use and not for resale since December 2, 2007.**

**Excluded from the Class are governmental entities, Defendants,**

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

FIRST AMENDED COMPLAINT

any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

20.    This action is maintainable as a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

## FRCP 23(a) Factors

21.    **Numerosity:** The Class comprises many thousands of persons throughout the State of California. The class is so numerous, that joinder of all members is impracticable, and the disposition of their claims in a Class Action will benefit the parties and the Court.

22.    **Commonality:** The questions of law and fact common to the Class have the capacity to generate common answers that will drive resolution of this action. Common questions of law and fact include, but are not limited to, the following:

a.    Whether Defendant possesses competent and reliable scientific evidence to support its advertising claims;

b.    Whether Defendant's conduct is an unfair business act or practice within the meaning of *Business & Professions Code* § 17200, *et seq.*;

c.    Whether Defendant's conduct is an unlawful business act or practice within the meaning of *Business & Professions Code* § 17200, *et seq.*

d.    Whether Defendant's conduct is a fraudulent business act or practice within the meaning of *Business & Professions Code* § 17200, *et seq.*;

e.    Whether Defendant's advertising is untrue or misleading within the meaning of *Business & Professions Code* § 17500, *et seq.*;

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

FIRST AMENDED COMPLAINT

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

f.   Whether Defendant made false and misleading representations in its advertising for Supple;

g.   Whether Defendant knew or should have known that the representations were false;

h.   Whether Defendant represented that Supple has characteristics, benefits, uses or quantities which it does not have;

i.   Whether Defendant represented that Supple is of a particular standard, quality, or grade, when it is of another;

j.   Whether Defendant disparaged the goods, services, or business of another by false or misleading representation of fact;

k.   Whether Defendant advertised Supple with intent not to sell it as advertised; and

l.   Whether Defendant's conduct is targeted toward disabled consumers.

23.   **Typicality:** Plaintiff's claims, and Defendant's defenses thereto, are typical of the claims of the Class, as the representations made by Defendant are consistent and uniform and are contained in advertisements that every member of the class was necessarily exposed to in purchasing Supple through a 1-800 number displayed on Defendant's infomercial or through one of the websites it controls. Thus, there exists a presumption that all Class members relied upon said uniform and consistent advertising and representations to their detriment. Additionally, all members of the Class have the same or similar injury (loss of purchase price) based on Defendant's false and misleading marketing and advertising.

24.   **Adequacy:** Plaintiff does not have any conflicts with any other members of the proposed Class, and will fairly and adequately represent and protect the interests of the proposed Class. Plaintiff has retained competent and experienced counsel in class action and other complex litigation.

FIRST AMENDED COMPLAINT

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

### FRCP 23(b)(3)

25.    **Common Issues Predominate:** As set forth in detail herein, common issues of fact and law predominate because all of Plaintiff's UCL, FAL and CLRA claims are based on a uniform, false and misleading advertising message which all class members were necessarily exposed to:  namely, that Supple will relieve joint pain and that the fast-acting ingredients in Supple are "clinically proven effective" to treat arthritis.

26.    **Superiority:**  A class action is superior to other available methods for fair and efficient adjudication of this controversy.  The expense and burden of individual litigation would make it impracticable or impossible for Class members to prosecute their claims individually. Absent a class action, Defendant will likely retain the benefits of its wrongdoing.  Because of the small size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein. Absent a representative action, the Class members will continue to suffer losses and Defendant will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains.

27.    The trial and litigation of Plaintiff's claims are manageable.  Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and the court system.  The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

28.    **Notice to the Class:** Because all of Defendant's sales are direct-to-consumer, either from calling a 1-800 number or ordering from Defendant's websites, Defendant has a record of every purchase and has every class member's contact information from the shipping records.  Thus, direct notice may be given to the Class.

### FACTUAL BACKGROUND

29.    The term "arthritis" encompasses more than 100 diseases and conditions

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

1    that affect the joints, surrounding tissues, and other connective tissues. Arthritis can

2    cause mild to severe pain in the joints, as well as joint tenderness and swelling.

3    Approximately 50 million Americans have some type of arthritis or related condition.

4         30.    An estimated 27 million adults in the US live with Osteoarthritis – the

5    most common type of arthritis. Osteoarthritis, also called degenerative joint disease or

6    OA, is caused by the breakdown of cartilage, which is the connective tissue that

7    cushions the ends of bones within the joint. Osteoarthritis is characterized by pain,

8    joint damage, and limited motion. The disease generally occurs late in life, and most

9    commonly affects the hands and large weight-bearing joints, such as the knees.  OA

10   causes damage to cartilage and bones, causing joint pain, swelling, stiffness and loss

11   of function.  Age, female gender, and obesity are risk factors for this condition.

12        31.    The two other most common forms of arthritis are fibromyalgia—a

13   common syndrome in which a person has long-term, body-wide pain and tenderness

14   in the joints, muscles, tendons and other soft tissues—and rheumatoid arthritis—a

15   long-term disease that leads to inflammation of the joints and surrounding tissues, and

16   typically affects joints on both sides of the body equally.

17        32.    Glucosamine and chondroitin have been widely promoted as a treatment

18   for OA.  Glucosamine, an amino sugar, is thought to promote the formation and repair

19   of cartilage. Chondroitin, a carbohydrate, is a cartilage component that is thought to

20   promote water retention and elasticity and to inhibit the enzymes that break down

21   cartilage.

22        33.    Since 1997, the use of glucosamine and chondroitin has exploded. The

23   country's best-selling dietary supplements, which come from animal sources such as

24   crab shells and cow, pig or chicken cartilage, were thought to relieve knee pain and

25   perhaps repair the cells that line the joint, revitalizing worn cartilage.

26        34.    Seeking to cash in on the ever-increasing popularity of glucosamine and

27   chondroitin, Defendant introduced Supple, asserting that the product is the "answer

28

9

for joint problems" and a necessary component for building healthy joints.  This could not be further from the truth.

## I.    Overview Of Supple's Marketing And Advertising

35.    As a self-proclaimed "arthritis survivor," Apatow understands the desperation of arthritis sufferers all too well.  He knows that, much like himself, they are willing to do anything—try anything—to relieve their pain and suffering.  Armed with this knowledge, Apatow—a former accountant with no scientific or medical background—concocted Supple from 2 unproven ingredients—glucosamine hydrochloride and chondroitin sulfate—and launched a targeted advertising campaign presenting a persistent, material message: Supple will relieve joint pain and the fast-acting ingredients in Supple are "clinically proven effective" to treat and/or prevent arthritis.

36.    Defendant's infomercials are its primary means of advertising Supple.  Hosted by Dr. Monita Poudyal—Apatow's wife and a current profits-interest member of Supple, LLC—these infomercials present Apatow with an open forum to gush about the purported uses and benefits of Supple.

37.    Sipping a glass of his product throughout the broadcast, Apatow boasts during the infomercials that the "disease-modifying" ingredients in Supple are "clinically proven" to provide complete relief from the immobility and pain experienced by consumers suffering from various forms of arthritis, including gout, carpal tunnel, and fibromyalgia.  Doubling down on these bold claims, Apatow promises amazing and fast relief, in as little as 7 days, with just one bottle of Supple each day.  He also tells how he suffered with disabling arthritis pain for years before he found the key ingredients in Supple and became an "arthritis survivor."  Not surprisingly, vulnerable consumers desperate to find a cure for their arthritis and joint pain are easily drawn in to Apatow's false and misleading claims.

38.    The same bold efficacy and speed-of-action claims carryover into

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

10

Defendant's internet advertising.  Indeed, although the format and presentation may vary slightly from one website Defendant controls to the next, the message of fast, permanent relief from arthritis never changes.

39.    As an illustration, Defendant's official website, www.supplebodies.com, includes a section entitled "Cause & Challenge," which lists the following "Top Ten Reasons" why Supple challenges consumers to try Supple risk-free:

1.    **Supple® can help you realize amazing and fast relief from joint suffering and can help you regain full mobility.**
2.    **Nothing is as proven, safe or effective as the key ingredients in Supple® to safely rebuild cartilage, reduce swelling, and address the causes of joint suffering.**
3.    **Supple's® key ingredients are the most extensively studied joint rebuilding agents in the world.**
4.    **Supple's® key ingredients are supported by over 35 human studies and are used safely by 13 million people with no dangerous side effects.**
5.    **Supple uses the highest strength of glucosamine and chondroitin that is highly regulated and sold as natural joint rebuilding agents in over 40 countries.**
6.    **The key agents in Supple® are prescribed by medical doctors as a first-line standard of care for joint suffering relief all around the world.**
7.    **Our glucosamine comes from the only producer of 100% pure vegetarian glucosamine in the world. You don't have to worry about contamination.**
8.    **Our chondroitin comes from the only company in the world that can make a pharmaceutical grade chondroitin.**
9.    **Supple's® labeled claims are 100% guaranteed.**
10.   **25% of the net profits, after taxes, of Supple, LLC advances joint health education and research.**

*See* Exibit B (screenshot of www.supplebodies.com taken on 4/26/20110); Exhibit C(screenshot of www.supplebodies.com taken on and 7/13/2012).

40.    A near mirror-image of this "Cause & Challenge" appears on www.suppleonline.com, *see* Exhibit D (screenshot of www.suppleonline.com taken

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

11

on 4/19/2011) and Exhibit E (screenshot of www.suppleonline.com taken on 7/12/2012), and, upon information and belief, this exact information is presented in one form or another in all of Defendant's online marketing.

41.    In sum, Defendant promotes Supple for one reason, and there's only one reason why anyone would spend nearly $100 on juice: permanent relief from the pain and mobility caused by arthritis.

## II.    Defendant's Labeling Contains Unapproved "Health Claims"

42.    Defendant markets and advertises Supple as a dietary supplement. Unlike drugs, dietary supplements are not pre-approved by the government for safety or effectiveness before marketing.  Also unlike drugs, supplements are not intended to treat, diagnose, prevent, or cure diseases, and, thus, under California's Sherman Food, Drug, and Cosmetic Law, *Cal. Health & Safety Code* § 109875, *et seq.* ("Sherman Law"), and, thus, dietary supplement manufacturers are not permitted to make "health claims" regarding a disease or health-related condition in their labeling.

43.    The Sherman Law adopts all federal food labeling regulations as the food labeling regulations for the state of California.[1]  Moreover, the Sherman Law creates an independent state requirement regarding labeling standards for health claims that completely adopts the federal standards set forth in 21 U.S.C. § 343(r): "Any food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims as set forth in Section 403(r) (21 U.S.C. § 343(r)) of the federal act and the regulations adopted pursuant thereto."[2]

---

[1] *See Cal. Health & Safety Code* § 110100(a) ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state.").
[2] *Cal. Health & Safety Code* § 110670.

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

44.     Pursuant to 21 U.S.C. § 343(r)(1)(B) and 21 C.F.R. § 101.14(d), a dietary supplement containing express or implied "health claims" on its label or labeling which "characterize the relationship" between consuming the supplement and "a disease or health-related condition" is misbranded, and, thus, cannot lawfully be marketed unless the FDA has issued a prior regulation authorizing use of such claims.

45.     As explained in recent FDA guidelines,[3] a health claim may be implicit: "For example, a statement may not mention a disease but may refer to identifiable characteristic signs or symptoms of a disease such that the intended use of the product to treat or prevent the disease may be inferred…. [T]he context of the statement, decided from information on the label and in other labeling, will determine if the statement is considered to be a disease claim."  The guide goes on to explain that "[a] statement is also a disease claim if it implies that it has an effect on a specific disease or class of diseases by using descriptions of the disease state.  Examples of disease claims are… 'improves joint mobility and reduces inflammation (rheumatoid arthritis).'"

46.     A good illustration of this type of unapproved health claim can be found in the April 18, 2005 Warning Letter sent by the U.S. Food and Drug Administration ("FDA") to Great American Products, Inc. ("GAP").[4]  GAP manufactured and distributed a dietary supplement called Arthritis Assist.  In the warning letter, the FDA determined GAP's labeling for Arthritis Assist included disease claims that caused the product to be an unapproved drug.  The following was given as an example of a disease claim found in the advertising for Arthritis Assist: "The exclusive formulation

---

[3] *See* FDA, "Guidance for Industry: Structure/Function Claims, Small Entity Compliance Guide" (available at: http://www.fda.gov/Food/GuidanceComplianceRegulatoryInformation/GuidanceDocuments/DietarySupplements/ucm103340.htm).

[4] *Available at* http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2005/ucm075374.htm.

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

13

of Arthritis Assist™ contains a unique blend of three ingredients that alleviate pain, swelling and overall discomfort in your joints. They also support your body to rebuild cartilage, helping you to prevent the onset of arthritis symptoms before they begin!"

47.    Defendant makes virtually identical claims on the labeling for Supple. Indeed, just as Arthritis Assist claimed to "alleviate pain, swelling and overall discomfort in your joints" and "rebuild cartilage," Defendant claims Supple can "comfort, lubricate, & rebuild your joints."[5]

48.    Moreover, Defendant has explicitly admitted that the phrase "comfort, lubricate & rebuild" refers to the signs and symptoms of arthritis and implies that Supple has an effect on the disease: "Numerous scientific studies and clinical data support the fact that glucosamine and chondroitin can alleviate the symptoms ('comfort and lubricate') of osteoarthritis ('OA') and also provide structure modification ("rebuild joints") to alter the course of the disease."  Ex. F (Brad Seiling's 9/23/2011 Response to Plaintiff's CLRA Letter).

49.    There can be no question that Defendant's labeling claim constitutes an express (or at a minimum implied) health claim, thereby rendering the product misbranded under the Sherman Law.  *See Cal. Health & Safety Code* § 110670.

### III.    Defendant's Purported Substantiation Relies On Clinical Trials Of An Ingredient Which Is NOT Contained In Supple

#### A.    The difference between glucosamine hydrochloride and glucosamine sulfate

50.    According to Defendant's marketing and advertising, the two primary

---

[5] Defendant's label, which has remained consistent throughout the class period, is featured prominently in both its infomercials and throughout its online marketing. *See* Exs. B, C.  Accordingly, consumers are exposed to the "health claim" on the labeling before Defendant ships the product.  Moreover, because most consumers are enrolled in Defendant's auto-ship program and receive multiple shipments each containing cans of Supple with the same labeling claims, the "comfort, lubricate, & rebuild" claim factors into the decision to continue receiving the product.

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

FIRST AMENDED COMPLAINT

ingredients in Supple are "glucosamine" and chondroitin sulfate. While the latter is referred to by its chemical name throughout, Defendant is careful to disclose the form of "glucosamine" used in the product – glucosamine hydrochloride – only as required on the label.

51.     This is not merely an oversight on Defendant's part, but, rather, a calculated move intended to deceive the public. Indeed, Defendant does not want the consuming public to realize that that the numerous clinical studies it cites in support of its bold claims, were actually done on a different form of glucosamine, namely *glucosamine sulfate*.[6]

52.     In fact, all of the clinical trials that have produced any positive results used glucosamine sulfate, *not glucosamine HCl as in Supple*, and were limited almost exclusively to those carried out by Rottapharm, a producer of one brand of glucosamine sulfate. Even those findings were called into question by the results of a recent two-year clinical trial comparing glucosamine sulfate (not from Rottapharm) to placebo in patients with hip osteoarthritis, which found that glucosamine sulfate had no effect on pain and produced no x-ray evidence of structural changes.[7]

**B.     GAIT study establishes that glucosamine hydrochloride and chondroitin sulfate are not effective**

53.     The lone clinical trial to use glucosamine HCl was the Glucosamine/Chondroitin Arthritis Intervention Trial (GAIT).[8] Defendant references the study when describing the ingredients in Supple: "Supple® is the only dietary

---

[6] Glucosamine is available in many forms, including glucosamine sulfate, glucosamine hydrochloride (HCl), and N-acetylglucosamine (NAG).

[7] David T. Felson, *Glucosamine sulfate might have no pain or structural changes associated with osteoarthritis*, Nature Clinical Practice Rheumatology 4, 518-19 (October 2008).

[8] The results of the GAIT study were published in the New England Journal of Medicine. *See* Clegg, D.O. et al, *Glucosamine, chondroitin sulfate, and the two in combination for painful knee osteoarthritis*, New England Journal of Medicine, Vol. 354, 795-808 (2006).

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

15

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

supplement beverage in the United States with the right to use the POWERFUL CSb™ USP CHONDROITIN made from the same, EXCLUSIVE manufacturer of the federally-funded GAIT study!"  Not surprisingly, Defendant fails to mention the fact that the GAIT study showed that glucosamine HCl and chondroitin sulfate – alone or in the exact combination found in Supple – are no more effective than a placebo.

54.     Under the direction of the National Institutes of Health (NIH), one of the world's foremost medical research centers, 13 highly prestigious research universities in the US performed the GAIT study, which was a randomized, double-blind, placebo controlled, parallel assignment efficacy study on approximately 1,600 Osteoarthritis sufferers.

55.     After six months, researchers reported that, overall, glucosamine HCl and chondroitin sulfate (whether alone, or in the exact combination found in Supple) did not provide significant relief from osteoarthritis pain.[9]

56.     When the GAIT Study was published in the New England Journal of Medicine, it was accompanied by an editorial which concluded the following:

The finding that glucosamine hydrochloride was not more efficacious than placebo is not surprising. Several systematic reviews and meta-analyses have examined the efficacy of glucosamine in the treatment of osteoarthritis of the knee.  In the most recent meta-analysis of eight randomized trials in which either glucosamine hydrochloride or glucosamine sulfate not manufactured by Rottapharm was compared with placebo, differences between the groups in the WOMAC[10] scores did not reach

_____

[9] The combination of glucosamine HCl and chondroitin sulfate appeared to help a small subset of participants with moderate-to-severe pain.  However, because of the small size of the subset, researchers specified that such findings should be considered "preliminary" and could not be confirmed without further testing designed for that purpose.
[10] WOMAC stands for Western Ontario and McMaster University Osteoarthritis Index, which is a is a set of standardized questionnaires used by health professionals to evaluate the condition of patients with osteoarthritis of the knee and hip.

16

significance.... On the basis of the results from GAIT, it seems prudent to tell our patients with symptomatic osteoarthritis of the knee that neither glucosamine hydrochloride nor chondroitin sulfate alone has been shown to be more efficacious than placebo for the treatment of knee pain. If patients choose to take dietary supplements to control their symptoms, they should be advised to take glucosamine sulfate rather than glucosamine hydrochloride and, for those with severe pain, that taking chondroitin sulfate with glucosamine sulfate may have an additive effect.[11]

57.     To study whether glucosamine HCl and/or chondroitin sulfate could diminish the structural damage caused by Osteoarthritis, interested GAIT patients were offered the opportunity to continue their original study treatment for 18 more months, for a total of two years.  The ancillary study enrolled 572 GAIT participants with moderate or severe knee Osteoarthritis, and the final sample included 357 subjects with Osteoarthritis in one or both knees.  Each of these subjects was randomly assigned to receive one of the five treatments used in the first GAIT study.

58.     The second GAIT analysis used x-rays to measure the physical effects of these supplements on knee joints.  Knee images from the 357 subjects were analyzed to see if daily glucosamine HCl/chondroitin supplements prevented a loss of joint space -- the distance between the ends of bones in the joint.

59.     Once again, researchers found that there were no meaningful differences among people taking the combination of glucosamine HCl/chondroitin sulfate and a placebo.  In fact, researchers observed that loss of joint space width was greater with the combined treatment than with either treatment alone, which raised the possibility that the combination of glucosamine HCl and chondroitin sulfate (in identical amounts to that found in Supple) may actually interfere with absorption.

60.     Since the conclusion of the ancillary GAIT study, there was another

---

[11] Hochberg, Marc C., *Nutritional Supplements for Knee Osteoarthritis – Still No Resolution*, New England Journal of Medicine, Vol. 354, 858-60 (2006).

FIRST AMENDED COMPLAINT

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

study conducted involving 662 GAIT participants with moderate-to-severe knee osteoarthritis.[12] This subset continued to receive their randomized treatement: glucosamine HCl (500 mg three times daily), chondroitin sulfate (400 mg three times daily), glucosamine and chondroitin sulfate combined (same doses), celecoxib (Celebrex, 200 mg once daily), or a placebo. Over two years, no treatment achieved a clinically significant difference in WOMAC pain or function as compared with placebo.

61.    In sum, there is no credible scientific evidence that the combination of glucosamine HCl and chondroitin sulfate found in Supple can "comfort, lubricate & rebuild" joints.  Moreover, because all of Defendant's purported substantiation relies on clinical studies of glucosamine sulfate – not glucosamine HCl as contained in Supple – claims that the product includes "clinically proven effective ingredients" and that "Supple's key ingredients are the most extensively studied joint rebuilding agents in the world" are unquestionably false and misleading.

## IV.    Supple's Unsubstantiated Speed-Of-Action Claims

62.    Defendant claims Supple provides "fast relief from joint suffering," and, on at least one official website, specifies that consumers can expect to experience "a significant difference in 7 days."

63.    However, nothing in the "Research Evidence" on Supple's website, nor in any of the studies cited by Defendant, in any way substantiates these speed-of-action claims.  Moreover, there is nothing in the body of scientific research on glucosamine HCl and chondroitin that supports these bold claims.

64.    As with the disease claims, Defendant attempts to legitimize the speed-

---

[12] *See* Sawitzke, A.D. et al, *Clinical efficacy and safety of glucosamine, chondroitin sulphate, their combination, celecoxib or placebo taken to treat osteoarthritis of the knee: 2-year results from GAIT*, Annals of the Rhematic Diseases, Vol. 69, 1459-64 (2010).

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

FIRST AMENDED COMPLAINT

1    of-action claims by pointing to studies done on glucosamine sulfate, an ingredient

2    which is not contained in Supple.

3          65.    Absent competent and reliable evidence that Supple provides "fast" joint

4    pain relief (i.e. within 7 days), Defendant's marketing and advertising violates

5    California's consumer protection statutes.

6    **V.    Claims Disparaging Other Glucosamine/Chondroitin Products**

7          66.    It is a violation of the Consumer Legal Remedies Act ("CLRA") to

8    "disparag[e] the goods, services, or business of another by false or misleading

9    representation of fact." Civil Code § 1770(a)(9).

10         67.    On the official Supple website, Defendant clearly disparages other

11   glucosamine and chondroitin products on the market:

> What is wrong with the glucosamine and chondroitin sold in
> America?  A lot of glucosamine and chondroitin sold in America is
> fake, low quality, has ineffective dosages, does not have in it what is
> claimed on the label, or comes from unproven sources.  The National
> Institutes of Health acknowledged these problems in an article they
> recently published in the New England Journal of Medicine; however,
> this information has been suppressed. This is the largest billion dollar
> American fraud of our generation.

20         68.    This statement has already been determined to be false by the Better

21   Business Bureau's National Advertising Division ("NAD").  Indeed, the NAD went so

22   far as to recommend Supple discontinue its inaccurate claims disparaging glucosamine

23   and chondroitin products in general, and limit any claims in future advertising to only

24   the ingredients in Supple.

25         69.    Moreover, Defendant's statement that the NIH has acknowledged issues

26   with the glucosamine and/or chondroitin sold in America is equally false and

27   misleading.  The alleged NIH "acknowledgement" apparently stems from a single line

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

FIRST AMENDED COMPLAINT

in the New England Journal of Medicine article detailing the GAIT study.  In that article, the authors stated that "[s]tudies have demonstrated substantial variation between the content listed on the labels of [glucosamine and chondroitin sulfate] products and the actual content."[13]  However, none of the authors of the article are affiliated with the NIH, and they do no have the ability nor the authority to act on behalf of the NIH.  Nevertheless, Defendant inaccurately represents that the NIH has taken a position regarding the quality, purity, and effectiveness of other glucosamine and chondroitin products on the market.  This is yet another example of Defendant's efforts toward consumers away from other glucosamine/chondroitin products, and dupe the public into purchasing Supple.

## VI.    Plaintiff Cabral's Experience With Supple

70.    Plaintiff Arlene Cabral has been diagnosed by a doctor as having arthritis, and suffers from disabling joint pain and immobility.

71.    Before deciding to purchase Supple, Plaintiff viewed Defendant's infomercial which described the uses and benefits of Supple.

72.    In reliance on the representations that Supple works fast, and that the key ingredients are "clinically proven" effective to treat the pain and immobility associated with arthritis, on April 28, 2009, Cabral purchased a 7-week supply of Supple for $94.95 (plus $19.95 processing and handling).  *See* Ex. A.

73.    Defendant charged Cabral's credit card shortly thereafter, but she never received a shipment of Supple.  She contacted customer service, and they eventually sent a replacement shipment on May 8, 2009.

74.    Cabral followed all of the instructions with the product and used it as directed.  However, she did not receive any pain relief or increased mobility as a result of drinking Supple.

---

[13] *See* Clegg, *supra* note 8, at 807.

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

20

75.    After using Supple as directed and discovering that the product did not work as advertised, Cabral received another shipment of Supple later in 2009. Although she did not agree to any up-sell or promotional offer when she originally purchased Supple, it appears Defendant automatically enrolled her in its "auto-ship program." When Cabral contacted customer service to return the shipment, they told her that, despite the fact that she did not enroll in the "auto-ship program," she would still have to pay the shipping and handling to return the product. She never returned the product for this reason.

76.    If Cabral had known Supple has no ability to relieve joint pain and/or effectively treat arthritis, she never would have purchased and used the product.

## FIRST CAUSE OF ACTION

## VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200, *ET SEQ.*

## (Unfair and Fraudulent Conduct Prongs of the Act)

77.    Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

78.    This cause of action is brought pursuant to *Business & Professions Code* § 17200, *et seq.*, on behalf of Plaintiff and a Class consisting of all persons residing in the State of California who purchased Supple for personal use and not for resale since December 2, 2007.

79.    As alleged hereinabove, Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendant's actions as set forth herein. Specifically, prior to the filing of this action, Plaintiff purchased Supple for her own personal use. In so doing, she relied upon the false representations in Defendant's infomercial that Supple's key ingredients are fast-acting and "clinically proven" to treat arthritis. Plaintiff has used Supple, but the product did not work as advertised and was worthless.

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

FIRST AMENDED COMPLAINT

80.     In its marketing and advertising, Defendant makes false and misleading statements regarding the uses and benefits of Supple, namely that Supple could relieve joint pain and the fast-acting ingredients in Supple are "clinically proven effective" to treat and/or prevent arthritis.

81.     Defendant does not have any competent and reliable scientific evidence to support the claims about Supple made in its marketing and advertising, and, in fact, the consensus among the scientific community is that chondroitin sulfate and glucosamine hydrochloride have no effect on arthritis.

82.     Defendant is aware that the claims that it makes about Supple are false, misleading and/or unsubstantiated.

83.     The misrepresentations by Defendant are material facts and constitute an unfair and fraudulent business practice within the meaning of *Business & Professions Code § 17200, et seq.*

84.     Defendant's business practices, as alleged herein, are unfair because: (1) the injury to the consumer is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) consumers could not reasonably have avoided the information because Defendant intentionally mislead the consuming public by means of the claims made with respect to Supple as set forth herein.

85.     Defendant's business practices as alleged herein are fraudulent because they are likely to deceive customers into believing that Supple has uses and benefits that it does not have.

86.     In addition, Defendant's use of various forms of advertising media to advertise, call attention to or give publicity to the sale of goods or merchandise which are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of *Business & Professions Code § 17200, et seq.*

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

22

FIRST AMENDED COMPLAINT

87.    Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct of unfair competition since Defendant is marketing and selling Supple in a manner likely to deceive the public.

88.    Defendant has peddled, and continues to peddle, its misrepresentations through a nationwide television and internet advertising campaign.

89.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

90.    Plaintiff and the putative class members were misled into purchasing Supple by Defendant's deceptive conduct as alleged hereinabove.

91.    Plaintiff and other putative class members were mislead and, because the misrepresentations and omissions were uniform and material, presumably believed that Supple had the ability to quickly and effectively treat and/or prevent arthritis (which the product cannot).

92.    Pursuant to *Business & Professions Code* § 17203, Plaintiff and the members of the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of advertising the sale and use of Supple.  Likewise, Plaintiff and the members of the Class seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiff and the Class restitution of the money wrongfully acquired by Defendant by means of responsibility attached to Defendant's failure to disclose the existence and significance of said misrepresentations.

93.    Plaintiff has suffered injury in fact and has lost money as a result of Defendant's false representations.  Indeed, Plaintiff purchased Supple in reliance on Defendant's false and misleading claims about arthritis relief.  Plaintiff would not have purchased Supple if she had known about the massive fraud perpetrated by Defendant.

## SECOND CAUSE OF ACTION

23

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

**VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200, *ET SEQ.***

**(Unlawful Conduct Prong of the Act)**

94.   Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

95.   The actions of Defendant, as alleged herein, constitute illegal and unlawful practices committed in violation of *Business & Professions Code* § 17200, *et seq.*

96.   Defendant has unlawfully marketed, advertised and sold Supple because: (1) it is violating sections 1770(a)(5), 1770(a)(7), 1770(a)(8) and 1770(a)(9) of the CLRA, *Civil Code* § 1750, *et seq.*; and (2) it is violating *Business & Professions Code* § 17500.

97.   Defendant's labeling claim—"comfort, lubricate, & rebuild your joints"—amounts to an unapproved "health claim," thereby rendering Supple misbranded in violation of *Health & Safety Code* § 110670.

98.   In addition, Defendant has unlawfully advertised and/or distributed Supple in violation of the California Health & Safety Code, which governs Defendant's conduct, in that:

a.   Defendant has disseminated false advertisements for Supple in that the product advertising contains false or misleading statements as to the purported ability of Supple to "comfort, lubricate and rebuild your joints" and to "help you realize amazing and fast relief from joint suffering," in violation of *Business & Professions Code* § 17500 and *Health & Safety Code* § 110390, which govern Defendant's conduct;

b.   Defendant has manufactured, sold, delivered, held or offered for sale a product that is falsely advertised in violation of *Health & Safety Code* § 110395, which governs Defendant's conduct; and

24

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

c.      Defendant has received in commerce a product that is falsely advertised or delivered or proffered for delivery such a product in violation of *Health & Safety Code* § 110400, which governs Defendant's conduct.

99.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

100.   Plaintiff and the putative class members were misled into purchasing Supple by Defendant's deceptive conduct as alleged hereinabove.

101.   Pursuant to *Business & Professions Code* § 17203, Plaintiff and the members of the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of advertising the sale and use of Supple.  Likewise, Plaintiff and the members of the Class seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiff and the Class restitution of the money wrongfully acquired by Defendant by means of responsibility attached to Defendant's failure to disclose the existence and significance of said misrepresentations.

102.   Plaintiff has suffered injury in fact and has lost money as a result of Defendant's false representations.  Indeed, Plaintiff purchased Supple in reliance on Defendant's false and misleading claims about arthritis relief.  Plaintiff would not have purchased Supple if she had known about the massive fraud perpetrated by Defendant.

## THIRD CAUSE OF ACTION

### VIOLATION OF BUSINESS & PROFESSIONS CODE § 17500, *ET SEQ.*

### (False and Misleading Advertising)

103.   Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

FIRST AMENDED COMPLAINT

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

104.   This cause of action is brought pursuant to *Business & Professions Code* § 17500, *et seq.*, on behalf of Plaintiff and a Class consisting of all persons residing in the State of California who purchased Supple for personal use and not for resale since December 2, 2007.

105.   *Business & Professions Code* § 17200 provides that "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice." Additionally, *Business & Professions Code* § 17500 provides that it is unlawful for any person or corporation, or any employee thereof "with intent directly or indirectly to dispose of real or personal property ... or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property ... , or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading ..."

106.   In its advertising for Supple, Defendant makes false and misleading statements that Supple's "clinically proven effective ingredients" will "comfort, lubricate, & rebuild your joints," and that Supple provides "amazing and fast relief from joint suffering."

107.   Defendant engaged in the deceptive conduct alleged hereinabove, which included deceptive and untrue representations regarding Supple, representations made to induce the public to purchase the product.

108.   In its marketing and advertising, Defendant makes knowingly false and misleading statements regarding the uses and benefits of Supple.

26

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

109.   Defendant does not have any competent and reliable scientific evidence to support the claims about Supple made in Defendant's marketing and advertising for the product.

110.   Defendant is aware that the claims that it makes about Supple are false, misleading and unsubstantiated.

111.   In addition, Defendant's use of various forms of advertising media to advertise, call attention to or give publicity to the sale of goods or merchandise which are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of *Business & Professions Code* § 17200, *et seq.*

112.   There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

113.   Plaintiff and the putative class members were misled into purchasing Supple by Defendant's deceptive conduct as alleged hereinabove.

114.   Plaintiff and other putative class members were mislead and, because the misrepresentations and omissions were uniform and material, presumably believed that Supple had the ability to "comfort, lubricate and rebuild" their joints and help them realize complete and fast relief from arthritis (which the product cannot).

115.   Pursuant to *Business & Professions Code* §§ 17203 and 17535, Plaintiff and the members of the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of advertising the sale and use of Supple.  Likewise, Plaintiff and the members of the Class seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiff and the Class restitution of the money wrongfully acquired by Defendant by means of responsibility attached to Defendant's failure to disclose the existence and significance of said misrepresentations.

116.   Plaintiff has suffered injury in fact and has lost money as a result of Defendant's false representations.  Indeed, Plaintiff purchased Supple in reliance on Defendant's false and misleading claims about arthritis relief.  Plaintiff would not have purchased Supple if she had known about the massive fraud perpetrated by Defendant.

## FOURTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA CIVIL CODE § 1750, *et seq.*

117.   Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

118.   Plaintiff brings this claim under *Civil Code* § 1750, *et seq.*, the CLRA, on behalf of herself and the Class, who were subject to Defendant's above-described unfair and deceptive conduct.

119.   As alleged hereinabove, Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendant's actions as set forth herein.  Specifically, prior to the filing of this action, Plaintiff purchased Supple for her own personal use.  In so doing, she relied upon the false representations referenced above.  Plaintiff has used Supple, but the product has not worked as advertised and was worthless.

120.   With the original complaint, Plaintiff concurrently filed the declaration of venue required by *Civil Code* § 1780(d).  Plaintiff and members of the putative Class are individuals who have purchased goods (i.e., Supple) for personal use.  This cause of action is asserted on behalf of a subclass of the putative Class, comprised of those members who purchased Supple within three (3) years of the commencement of this action.

121.   Defendants' conduct described herein was intended to result in the sale of Supple to the consuming public, and constituted the following practices proscribed by *Civil Code* § 1770:

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

FIRST AMENDED COMPLAINT

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

a. By representing that Supple's "clinically proven effective ingredients" will "comfort, lubricate, & rebuild your joints," and that Supple provides "amazing and fast relief from joint suffering," Defendant is "representing that goods... [have] uses, benefits, or qualities which they do not have";

b. By representing that Supple contains "clinically proven effective ingredients" and that "Supple uses the highest strength of glucosamine and chondroitin that is highly regulated and sold as natural joint rebuilding agents in over 40 countries," Defendant is representing that Supple is of a particular standard, quality, or grade, when it is of another;

c. By stating that "[a] lot of glucosamine and chondroitin sold in America is fake, low quality, has ineffective dosages, does not have in it what is claimed on the label, or comes from unproven sources" and falsely claiming that the NIH recently acknowledged this issue, Defendant is "[d]isparaging the goods, services, or business of another by false or misleading representation of fact"; and

d. By representing that Supple's "clinically proven effective ingredients" will "comfort, lubricate, & rebuild your joints," and that Supple provides "amazing and fast relief from joint suffering," Defendant is "[a]dvertising goods... with intent not to sell them as advertised."

122. Defendant knew or should have known that Supple cannot relieve arthritic joint pain, and does not "comfort, lubricate, & rebuild your joints" and that the product is not capable of providing "amazing and fast relief from joint suffering."

123. Defendant's actions as described herein were done with conscious disregard of Plaintiff's rights, and Defendant was wanton and malicious in its concealment of the same.

124. Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA since Defendant is still representing that Supple has characteristics and abilities which the product does not have, and has thus injured Plaintiff and the Class.

125. Plaintiff and other members of the putative Class have suffered injury in fact and have lost money as a result of Defendant's false representations. Indeed, Plaintiff and the Class purchased Supple because of Defendant's persistent and material message that Supple will relieve joint pain and that the fast-acting ingredients in Supple are "clinically proven effective" to treat and/or prevent arthritis. Plaintiff would not have purchased Supple if she had known about the massive fraud perpetrated by Defendant.

126. Pursuant to *Civil Code* § 1780(a), Plaintiff seeks injunctive relief in the form of enjoining Defendant from expressly or impliedly representing to current and potential purchasers of Supple as follows:

    a.   Remove all references, in all of Defendant's marketing and advertising, that Supple will "comfort, lubricate & rebuild your joints";

    b.   Remove all references, in all of Defendant's marketing and advertising, that Supple contains "clinically proven effective ingredients";

    c.   Remove all references, in all of Defendant's marketing and advertising, that Supple provides "fast relief from joint suffering";

    d.   Discontinue the false and misleading representations disparaging other glucosamine and chondroitin products; and,

    e.   Immediately cease making any false or misleading claims about Supple, including all those referenced above.

127. Plaintiff and members of the Class shall be irreparably harmed if such an order is not granted.

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

FIRST AMENDED COMPLAINT

128.   Pursuant to *Civil Code* § 1782, Plaintiff notified Defendant on or about July 13, 2011 (via letter) of the alleged violations of section 1770 and demanded that the same be corrected.  Defendant would not agree to the requested relief.  Plaintiff now seeks an award of restitution and damages in accordance with *Civil Code* § 1782(a) & (d).

129.   In addition, the CLRA has enhanced penalties for acts perpetrated against senior citizens and disabled persons.  If the defendant's conduct is directed at a class of persons who are senior citizens and/or "disabled," a $5,000.00 civil penalty may be awarded to "each class member."  *Civ. Code* § 1780(b).  A "disabled person" is someone who has a "physical or mental impairment which substantially limits one or more major life activities."  *Civ. Code* § 1761(f), (g).  Under California law, individuals suffering from arthritis are "disabled."  Defendant's conduct is clearly directed at senior citizens (the primary demographic afflicted with arthritis) and the disabled (i.e. those diagnosed with arthritis), as Supple is intended to treat and/or prevent arthritis.  Accordingly, the Court may award a civil penalty of up to $5,000 for each class member.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and on behalf of the members of the Class defined herein, pray for judgment and relief on all Causes of Action as follows:

A.    An order certifying that the action may be maintained as a Class Action;

B.    An order enjoining Defendant from pursuing the policies, acts, and practices complained of herein;

C.    An order requiring Defendant to pay restitution to Plaintiff and all members of the Class;

D.    Actual damages;

31

E.    Punitive damages;

F.    For pre-judgment interest from the date of filing this suit;

G.    Reasonable attorneys' fees;

H.    Costs of this suit; and

I.    Such other and further relief as the Court may deem necessary or appropriate.

Dated: July 13, 2012                    MILSTEIN ADELMAN, LLP

By: _____
    Gillian L. Wade
    M. Isaac Miller
    Attorneys for Plaintiff, Arlene Cabral
    And the Proposed Class

### **JURY TRIAL DEMANDED**

Plaintiff demands a jury trial on all triable issues.

Dated: July 13, 2012                    MILSTEIN ADELMAN, LLP

By: _____
    Gillian L. Wade
    M. Isaac Miller
    Attorneys for Plaintiff, Arlene Cabral
    And the Proposed Class

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

32

FIRST AMENDED COMPLAINT

# EXHIBIT A

### Supple Beverages Order Invoice

Arleen Cabral
731 S Magnolia Ave
Rialto, CA 92376

**Order number: T02066100101**
**Order date:      04/28/09**

| Product # | Description | Price | P&H |
|-----------|-------------|-------|-----|
| 7WC | 7 week Supple Peach Mango **Auto ship program** | $94.95 | $19.95 |
|  | Total Charge | $114.90 | |

**Order number: P00321590001 - replacement**
**Order date:      05/08/09**

| Product # | Description | Price | P&H |
|-----------|-------------|-------|-----|
| 7WC | Replacement order for 4/28/09 shipment (7 week Supple Peach Mango) | $00.00 | $00.00 |
|  | Total Charge | $00.00 | |

For any further questions feel free to contact customer service by calling 1-866-219-6371 between the hours of 7am – 11pm CST Monday through Friday and 7am -7pm CST Saturday

Regards

Supple Customer Service Team

# EXHIBIT B



Questions? Call 1-800-345-2819
Chat available

## The Top 3 Questions You Should Ask About Joint Health Supplements In The USA

**1. What is wrong with the glucosamine and chondroitin sold in America?**

A lot of glucosamine and chondroitin sold in America is fake, low quality, has ineffective dosages, does not have in it what is claimed on the label, or comes from unproven sources. The National Institutes of Health acknowledged these problems in an article they recently published in the New England Journal of Medicine; however, this information has been suppressed. This is the largest billion dollar American fraud of our generation.

**2. What is wrong with natural remedies sold for joint suffering in America?**

These products are not strictly regulated and either: (A) have no significant scientific evidence proving that they work, (B) use low quality ingredients, or (C) are skimping on ingredients so they are not effective at all.

**3. Should dietary supplements be more strictly regulated in America?**

Yes. Most of what consumers are buying is not effective at all. No federal agency is checking to make sure that what is stated on a label is in a product or that it is something that works.

## Top Ten Reasons Why We Challenge You To Try Supple® Risk-Free

**1. Supple®** can help you realize amazing and fast relief from joint suffering and can help you regain full mobility.

**2. Nothing** is as proven, safe or effective as the key ingredients in Supple® to safely rebuild cartilage, reduce swelling, and address the causes of joint suffering.

**3. Supple's®** key ingredients are the most extensively studied joint rebuilding agents in the world.

**4. Supple's®** key ingredients are supported by over 35 human studies and are used safely by 13 million people with no dangerous side effects.

**5. Supple** uses the highest strength of glucosamine and chondroitin that is highly regulated and sold as natural joint rebuilding agents in over 40 countries.

**6. The key agents** in Supple® are prescribed by medical doctors as a first-line standard of care for joint suffering relief all around the world.

**7. Our glucosamine** comes from the only producer of 100% pure vegetarian glucosamine in the world. You don't have to worry about contamination.

**8. Our chondroitin** comes from the only company in the world that can make a pharmaceutical grade chondroitin.

9. Supple's® labeled claims are 100% guaranteed.

10. 25% of the net profits, after taxes, of Supple, LLC advances joint health education and research.

## Take the Supple® Challenge Today!

Feel the difference for yourself and experience the life transforming power of Supple®. If you order today, you can obtain a significant discount off the regular price. This is a special, limited-time program, so act now.

## BEST VALUE 48 DAY SUPPLY
SAVE $70

WITH AUTO DELIVERY

48 Supple® cans, shipped every 43 days, you may cancel at any time

$94.95 +19.95 S&P

$1.97 /DAY +S&P

ORDER TODAY ›

## OTHER SUPPLE PROGRAMS

### 48 Day Supply
SAVE $55
$109.90 +19.95 S&P
48 Supple® cans

$2.29 /DAY +S&P

⟳ ORDER TODAY

### 24 Day Supply
SAVE $32
$47.95 +14.95 S&P
24 Supple® cans, shipped every 30 days, you may cancel at any time

WITH AUTO DELIVERY

$1.99 /DAY +S&P

⟳ ORDER TODAY



Strong Women and Men Beat Arthritis

With your order, you will receive the **New York Times Bestseller, "Strong Women and Men Beat Arthritis"** to learn cutting-edge, scientifically proven strategies for the relief of arthritis, rheumatoid and ostearthritis.

## GET AN EVIDENCE-BASED SOLUTION TO YOUR JOINT PROBLEMS TODAY!

First Name*

Last Name*

Street Address 1*

Street Address 2

City*

State1*
Select

ZIP*

Email Address*

Confirm Email Address*

Phone Number*

Choose Your Offer*
Save $70 - 48 Day Supply for $94.95 (Resupply Program)

SUBMIT ORDER ›

1 AK, HI, GU, or VI for an extra $19.95 S&P.

### Supplement Facts
Serving Size 1 Can (237mL)

| | Amount Per Serving | % DV |
|---|---|---|
| Calories | 30 | |
| Total Carbohydrate | 6 g | 2%‡ |
| Sugars | 3 g | ‡ |
| Vitamin C | 120 mg | 200% |
| Vitamin D | 1,000 IU | 250% |
| Vitamin E | 8 IU | 25% |
| Niacin | 20 mg | 100% |
| Vitamin B6 | 2 mg | 100% |
| Vitamin B12 | 6 mcg | 100% |
| Pantothenic Acid | 10 mg | 100% |
| Calcium | 80 mg | 8% |
| Magnesium | 24 mg | 6% |
| Sodium | 115 mg | 5% |
| Glucosamine HCL (shellfish-free) | 1.5 g (1,500 mg) | ‡ |
| Chondroitin Sulfate (bovine) | 1.2 g (1,200 mg) | ‡ |

† % DVs are based on a 2,000 calorie diet.
‡ Daily Value (DV) not established.

---

Terms & Conditions  |  Privacy Policy  |  Site Map  |  Guarantee  |  Contact Us

Copyright © 2009-2011 Supple, LLC, All Rights Reserved

*The statements on this page have not been evaluated by the Food & Drug Administration.
This product is not intended to diagnose, treat, cure or prevent any disease.

**YOU MUST BE 18 OR OLDER TO ORDER.**

.

# EXHIBIT C



Questions? Call 1-800-345-2819

Chat available

## The Top 3 Questions You Should Ask About Joint Health Supplements In The USA

**1. What is wrong with the glucosamine and chondroitin sold in America?**

A lot of glucosamine and chondroitin sold in America is fake, low quality, has ineffective dosages, does not have in it what is claimed on the label, or comes from unproven sources. The National Institutes of Health acknowledged these problems in an article they recently published in the New England Journal of Medicine; however, this information has been suppressed. This is the largest billion dollar American fraud of our generation.

**2. What is wrong with natural remedies sold for joint suffering in America?**

These products are not strictly regulated and either: (A) have no significant scientific evidence proving that they work, (B) use low quality ingredients, or (C) are skimping on ingredients so they are not effective at all.

**3. Should dietary supplements be more strictly regulated in America?**

Yes. Most of what consumers are buying is not effective at all. No federal agency is checking to make sure that what is stated on a label is in a product or that it is something that works.

## Top Ten Reasons Why We Challenge You To Try Supple® Risk-Free

**1. Supple®** can help you realize amazing and fast relief from joint suffering and can help you regain full mobility.

**2.** Nothing is as proven, safe or effective as the key ingredients in Supple® to safely rebuild cartilage, reduce swelling, and address the causes of joint suffering.

**3. Supple's®** key ingredients are the most extensively studied joint rebuilding agents in the world.

**4. Supple's®** key ingredients are supported by over 35 human studies and are used safely by 13 million people with no dangerous side effects.

**5.** Supple uses the highest strength of glucosamine and chondroitin that is highly regulated and sold as natural joint rebuilding agents in over 40 countries.

**6.** The key agents in Supple® are prescribed by medical doctors as a first-line standard of care for joint suffering relief all around the world.

**7.** Our glucosamine comes from the only producer of 100% pure vegetarian glucosamine in the world. You don't have to worry about contamination.

**8.** Our chondroitin comes from the only company in the world that can make a pharmaceutical grade chondroitin.

**9. Supple's®** labeled claims are 100% guaranteed.

**10.** 25% of the net profits, after taxes, of Supple, LLC advances joint health education and research.

## Take the Supple® Challenge Today!

Feel the difference for yourself and experience the life transforming power of Supple®. If you order today, you can obtain a significant discount off the regular price. This is a special, limited-time program, so act now.

### BEST VALUE
### 48 DAY SUPPLY
### SAVE $70

WITH AUTO DELIVERY

48 Supple® cans, shipped every 43 days, you may cancel at any time

$94.95 +19.95 S&P

**$1.97** /DAY +S&P

**ORDER TODAY ❯**

### OTHER SUPPLE PROGRAMS

### 48 Day Supply
### SAVE $55
$109.90+19.95 S&P
48 Supple® cans

**$2.29** /DAY +S&P

🔄 ORDER TODAY

### 24 Day Supply  WITH AUTO DELIVERY
### SAVE $32
$47.95 +14.95 S&P
24 Supple® cans, shipped every 30 days, you may cancel at any time

**$1.99** /DAY +S&P

🔄 ORDER TODAY



With your order, you will receive the New York Times Bestseller, "Strong Women and Men Beat Arthritis" to learn cutting-edge, scientifically proven strategies for the relief of arthritis, rheumatoid and osteoarthritis.

## GET AN EVIDENCE-BASED SOLUTION TO YOUR JOINT PROBLEMS TODAY!

First Name*
[                    ]

Last Name*
[                    ]

Street Address 1*
[                    ]

Street Address 2
[                    ]

City*
[                    ]

State*     AL [ ▾ ]     ZIP*
[                    ]

Email Address*
[                    ]

Confirm Email Address*
[                    ]

Phone Number*
[                    ]

Coupon (Referring Associate ID)
[                    ]

Choose Your Offer*
[ Save $70 - 48 Day Supply for $94.95 (Resupply Program)   ▾ ]

**SUBMIT ORDER ❯**

* AK, HI, GU, PR or VI for an extra $19.95 S&P.

### Supplement Facts
Serving Size 1 Can (237mL)

| | Amount Per Serving | % DV |
|---|---|---|
| Calories | 30 | |
| Total Carbohydrate | 6 g | 2%‡ |
| Sugars | 3 g | ‡ |
| Vitamin C | 120 mg | 200% |
| Vitamin D | 1,000 IU | 250% |
| Vitamin E | 8 IU | 25% |
| Niacin | 20 mg | 100% |
| Vitamin B6 | 2 mg | 100% |
| Vitamin B12 | 6 mcg | 100% |
| Pantothenic Acid | 10 mg | 100% |
| Calcium | 80 mg | 8% |
| Magnesium | 24 mg | 6% |
| Sodium | 115 mg | 5% |
| Glucosamine HCL (shellfish-free) | 1.5 g (1,500 mg) | ‡ |
| Chondroitin Sulfate (bovine) | 1.2 g (1,200 mg) | ‡ |

† % DVs are based on a 2,000 calorie diet.
‡ Daily Value (DV) not established.

---

Terms & Conditions | Privacy Policy | Affiliates Program | Site Map | Guarantee | Contact Us

Copyright © 2009-2012 Supple, LLC, All Rights Reserved

---

*The statements on this page have not been evaluated by the Food & Drug Administration.
This product is not intended to diagnose, treat, cure or prevent any disease.

**YOU MUST BE 18 OR OLDER TO ORDER.**

# EXHIBIT D



HOME | ABOUT SUPPLE* | WHY IT WORKS | CAUSE & CHALLENGE | FAQ | TESTIMONIALS | ORDER NOW

**Questions? Call 1-800-345-2819**

## Cause & Challenge

CAUSE & CHALLENGE



# The Top 3 Questions You Should Ask About Joint Health Supplements In The USA

### 1. What is wrong with the glucosamine and chondroitin sold in America?

Most glucosamine and chondroitin sold in America is fake, low quality, has ineffective dosages, does not have in it what is claimed on the label, or comes from unproven sources. The National Institutes of Health acknowledged these problems in an article they recently published in the New England Journal of Medicine; however, this information has been suppressed. This is the largest billion dollar American fraud of our generation.

### 2. What is wrong with natural remedies sold for joint suffering in America?

These products are not strictly regulated and either: (A) have no significant scientific evidence proving that they work, (B) use low quality ingredients, or (C) are skimping on ingredients so they are not effective at all.

### 3. Should dietary supplements be more strictly regulated in America?

Yes. Most of what consumers are buying is not effective at all. No federal agency is checking to make sure that what is stated on a label is in a product or that it is something that works.

## Top Ten Reasons Why We Challenge You To Try Supple® Risk-Free

1. Supple® can help you realize complete and fast relief from joint suffering and can help you regain full mobility.

2. Nothing is as proven, safe or effective as the active ingredients in Supple® to safely rebuild cartilage, reduce swelling, and heal the causes of joint suffering.

3. Supple's® active ingredients are the most extensively studied joint rebuilding agents in the world.

4. Supple's® active ingredients are supported by over 35 human studies and are used safely by 13 million people with no dangerous side effects.

5. Supple uses the highest strength of glucosamine and chondroitin that is highly regulated and sold as natural joint rebuilding agents in over 40 countries.

6. The active agents in Supple® are prescribed by medical doctors as a first-line standard of care for joint pain relief all around the world.

7. Our glucosamine comes from the only producer of 100% pure vegetarian

glucosamine in the world. You don't have to worry about contamination.

8. Our chondroitin comes from the only company in the world that can make a pharmaceutical grade chondroitin.

9. Supple's® labeled claims are 100% guaranteed.

10. 25% of the net profits, after taxes, of Supple Beverages, LLC advances joint health education and research.

## Take the Supple® Challenge Today!

Feel the difference for yourself and experience the life transforming power of Supple®. If you order today, you can obtain a significant discount off the regular price. This is a special, limited-time program, so act now.



Terms & Conditions  |  Privacy Policy  |  Site Map  |  Guarantee  |  Affiliates  |  Contact Us

Copyright © 2011 Supple Beverages, LLC, All Rights Reserved  |  Powered By Infomercial.TV, Inc.

*The statements on this page have not been evaluated by the Food & Drug Administration. This product is not intended to diagnose, treat, cure or prevent any disease.

# EXHIBIT E



## The Top 3 Questions You Should Ask About Joint Health Supplements In The USA

**1. What is wrong with the glucosamine and chondroitin sold in America?**

A lot of glucosamine and chondroitin sold in America is fake, low quality, has ineffective dosages, does not have in it what is claimed on the label, or comes from unproven sources. The National Institutes of Health acknowledged these problems in an article they recently published in the New England Journal of Medicine; however, this information has been suppressed. This is the largest billion dollar American fraud of our generation.

**2. What is wrong with natural remedies sold for joint suffering in America?**

These products are not strictly regulated and either: (A) have no significant scientific evidence proving that they work, (B) use low quality ingredients, or (C) are skimping on ingredients so they are not effective at all.

**3. Should dietary supplements be more strictly regulated in America?**

Yes. Most of what consumers are buying is not effective at all. No federal agency is checking to make sure that what is stated on a label is in a product or that it is something that works.

## Top Ten Reasons Why We Challenge You To Try Supple® Risk-Free

**1. Supple®** can help you realize amazing and fast relief from joint suffering and can help you regain full mobility.

**2. Nothing is as proven, safe or effective as the key ingredients in Supple®** to safely rebuild cartilage, reduce swelling, and address the causes of joint suffering.

**3. Supple's®** key ingredients are the most extensively studied joint rebuilding agents in the world.

**4. Supple's®** key ingredients are supported by over 35 human studies and are used safely by 13 million people with no dangerous side effects.

**5. Supple** uses the highest strength of glucosamine and chondroitin that is highly regulated and sold as natural joint rebuilding agents in over 40 countries.

**6. The key agents in Supple®** are prescribed by medical doctors as a first-line standard of care for joint suffering relief all around the world.

**7. Our glucosamine** comes from the only producer of 100% pure vegetarian glucosamine in the world. You don't have to worry about contamination.

**8. Our chondroitin** comes from the only company in the world that can make a pharmaceutical grade chondroitin.

**9. Supple's®** labeled claims are 100% guaranteed.

**10. 25%** of the net profits, after taxes, of Supple, LLC advances joint health education and research.

## Take the Supple® Challenge Today!

Feel the difference for yourself and experience the life transforming power of Supple®. If you order today, you can obtain a significant discount off the regular price. This is a special, limited-time program, so act now.

**BEST VALUE**
**48 DAY SUPPLY**
**SAVE $70**

WITH AUTO DELIVERY
48 Supple® cans, shipped every 43 days,
you may cancel at any time
$94.95 + 19.95 S&P

**$1.97** /DAY +S&P

**ORDER TODAY ➤**

### OTHER SUPPLE PROGRAMS

**48 Day Supply**
**SAVE $55**
$109.90 + 19.95 S&P
48 Supple® cans

**$2.29** /DAY +S&P

ↄ ORDER TODAY

**24 Day Supply** WITH AUTO DELIVERY
**SAVE $32**
$47.95 + 14.95 S&P
24 Supple® cans, shipped every 30 days,
you may cancel at any time

**$1.99** /DAY +S&P

ↄ ORDER TODAY



With your order, you will receive the New York Times Bestseller, "Strong Women and Men Beat Arthritis" to learn cutting-edge, scientifically proven strategies for the relief of arthritis, rheumatoid and ostearthritis.

## GET AN EVIDENCE-BASED SOLUTION TO YOUR JOINT PROBLEMS TODAY!

First Name*

Last Name*

Street Address 1*

Street Address 2

City*

State* AL

ZIP*

Email Address*

Confirm Email Address*

Phone Number*

Coupon (Referring Associate ID)

Choose Your Offer*
Save $70 - 48 Day Supply for $94.95 (Resupply Program)

**SUBMIT ORDER ➤**

† AK, HI, GU, PR or VI for an extra $19.95 S&P.

### Supplement Facts
Serving Size 1 Can (237mL)

| | Amount Per Serving | %DV |
|---|---|---|
| Calories | 30 | |
| Total Carbohydrate | 6 g | 2%‡ |
| Sugars | 3 g | ‡ |
| Vitamin C | 120 mg | 200% |
| Vitamin D | 1,000 IU | 250% |
| Vitamin E | 8 IU | 25% |
| Niacin | 20 mg | 100% |
| Vitamin B6 | 2 mg | 100% |
| Vitamin B12 | 6 mcg | 100% |
| Pantothenic Acid | 10 mg | 100% |
| Calcium | 80 mg | 8% |
| Magnesium | 24 mg | 6% |
| Sodium | 115 mg | 5% |
| Glucosamine HCL (shellfish-free) | 1.5 g (1,500 mg) | ‡ |
| Chondroitin Sulfate (bovine) | 1.2 g (1,200 mg) | ‡ |

† % DVs are based on a 2,000 calorie diet.
‡ Daily Value (DV) not established.

Terms & Conditions | Privacy Policy | Affiliates Program | Site Map | Guarantee | Contact Us

Copyright © 2009-2012 Supple, LLC, All Rights Reserved

*The statements on this page have not been evaluated by the Food & Drug Administration.
This product is not intended to diagnose, treat, cure or prevent any disease.

**YOU MUST BE 18 OR OLDER TO ORDER.**

# EXHIBIT F



**Brad W. Seiling**
Manatt, Phelps & Phillips, LLP
Direct Dial: (310) 312-4234
E-mail: bseiling@manatt.com

September 23, 2011

Client-Matter: 43518-030

**VIA EMAIL**

Isaac Miller, Esq.
Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, CA  90405

     **Re:   Supple LLC**

Dear Mr. Miller:

     This firm represents Supple LLC ("Supple").  This responds to your letter dated July 18, 2011 regarding the Supple Beverage ("Supple Beverage").

     You allege on behalf of Arlene Cabral and "thousands of California consumers" that Supple violates the California Consumer Legal Remedies Act ("CLRA") in its advertising and marketing of the Supple Beverage.  In particular, you assert that Supple has no reasonable or scientific basis for the following claims:

- "Comfort, Lubricate & Rebuild Your Joints!"

- "Supple can help you realize complete and fast relief from joint suffering and can help you regain full mobility."

- "Supple uses the highest strength of glucosamine and chondroitin that is highly regulated and sold as natural joint rebuilding agents in over 40 countries."

- "What is wrong with the glucosamine and chondroitin sold in America?  A lot of glucosamine and chondroitin sold in America is fake, low quality, has ineffective dosages, does not have in it what is claimed on the label, or comes from unproven sources.  The National Institutes of Health acknowledged these problems in an article they recently published in the New England Journal of Medicine; however, this information has been suppressed.  This is the largest billion dollar American fraud of our generation."

- "Plus it helps you lose weight."

- "Extensive research confirms arthritis can be healed.  Such "disease claims" - i.e. claims to diagnose, cure, mitigate, treat or prevent disease - require prior FDA



**manatt**

manatt | phelps | phillips

Isaac Miller, Esq.
September 23, 2011
Page 2

approval, which Supple does not have, and may be made only for products that are approved drug products or for foods under separate legal provisions that apply to "health claims."

You request that Supple make certain changes to its advertising, produce all evidence to support Supple's claims, and provide full restitution to Ms. Cabral and "thousands of California consumers."

Supple denies that these claims, or any other claims in its advertising of the Supple Beverage, are false. Supple bases all of its advertising claims regarding the effectiveness of the main ingredients in the Supple Beverage on overwhelming scientific studies and clinical data. Each of the studies constitutes competent and reliable scientific evidence about the efficacy of the Supple Beverage and provides substantiation for the claims in Supple's advertisements. The scientific evidence that supports Supple's claims is so voluminous and overwhelming that we will not include all of it in this letter. What follows is a summary of the numerous scientific studies that support the claims in Supple's advertisements.

### The Supple Beverage Effectively Treats Osteoarthritis:

The two main ingredients in the Supple Beverage are glucosamine and chondroitin. Supple bases its efficacy claims regarding the Supple Beverage on a wealth of scientific studies regarding these active ingredients. Numerous scientific studies and clinical data support the fact that glucosamine and chondroitin can alleviate the symptoms ("comfort and lubricate") of osteoarthritis ("OA") and also provide structure modification ("rebuild joints") to alter the course of the disease. Regulatory agencies as well as international scientific organizations endorse the use of glucosamine and chondroitin in the management of osteoarthritis.

For example, three rigorous meta-analyses published in peer-reviewed journals have demonstrated that glucosamine and chondroitin have clear symptom- and structure-modifying effects on osteoarthritis. An article in the prestigious *The Journal of American Medical Association* 2000 edition concluded that "trials of glucosamine and chondroitin preparations for osteoarthritis collectively demonstrate moderate to large treatment effects on symptoms..."[1] Likewise, Richy, et al. concluded in 2003 that glucosamine has "highly significant efficacy ...on all outcomes, including joint space narrowing and WOMAC" scoring.[2] Most recently,

---

[1] McAlindon, 2000: Glucosamine and Chondroitin for the Treatment of Osteoarthritis: A Systematic Quality Assessment and Meta-Analysis. McAlindon, T et al. *JAMA* Vol 283(11), 15 March 2000, 1469-1475.
[2] Richy 2003: Structural and Symptomatic Efficacy of Glucosamine and Chondroitin in Knee Osteoarthritis: A Comprehensive Meta-Analysis. *Arch Int Med* Vol 163, July 14, 2003, 1514-1522.



# manatt
manatt | phelps | phillips

Isaac Miller, Esq.
September 23, 2011
Page 3

Hochberg, et al. concluded in 2010 that "chondroitin sulfate is effective for reducing the rate of decline in minimum joint space width in patients with knee OA". [3]

Glucosamine and chondroitin have received the highest level of recommendation for use in osteoarthritis by the European League Against Rheumatism European (EULAR). EULAR represents patients, health professionals, and scientific societies of rheumatology of all the European nations and its practice guidelines are established by an expert committee on osteoarthritis comprised of 19 rheumatologists, four orthopedic surgeons and one research fellow from 13 European countries. In its publication, glucosamine and chondroitin are noted to have the highest level of clinical evidence, 1A, because of extensive randomized controlled clinical trials and meta-analyses available for use in the management of knee osteoarthritis.

Additionally, the Osteoarthritis Research Society International (OARSI), an international organization for scientists and health care professionals focused on the prevention and treatment of osteoarthritis, recommends the use of glucosamine and chondroitin in their latest evidence-based expert consensus guidelines. [4] For example:

- Drovanti, et al. studied 80 osteoarthritis patients randomly allocated to 1500mg daily glucosamine or placebo for 30 days. They found that by day 7, the glucosamine treated group had experienced significantly less articular pain than the placebo group. This trend continued through the end of the study at day 30. In addition, 25%, 23% and 20% of the glucosamine treated patients were symptom-free with respect to pain/ tenderness, restriction of movement, and overall symptoms, respectively. These changes were statistically significant when compared to the placebo group. The authors concluded that "significantly more patients treated with glucosamine sulfate experienced complete freedom from pain or restricted function," and that "the articular function was restored to a larger degree... so that a substantial percentage of patients completely regained their mobility." [5]

- Muller-FaBbender, et al. conducted a 4 week randomized, double blind, controlled trial of glucosamine 1500mg vs. ibuprofen 1200mg daily in 200 osteoarthritis patients. They found that a "~30% improvement rate was noted in

[3] Hochberg, 2010: Structure-Modifying Effects of Chondroitin Sulfate in Knee Osteoarthritis: An Updated Meta-Analysis of Randomized Placebo-Controlled Trials of 2-year Duration. Hochberg, M.C. *Osteoarthritis and Cartilage* 18 (2010)S28-S31.
[4] Zhang, 2008: OARSI Recommendations for the Management of Hip and Knee Osteoarthritis, Part II: OARSI Evidence-Based, Expert Consensus Guidelines. Zhang W, et al. *Osteoarthritis and Cartilage* (2008) 16, 137-162.
[5] Drovanti,1980: Therapeutic Activity Of Oral Glucosamine Sulfate In 0steoarthrosis: A Placebo-Controlled Double-Blind Investigation. A. Drovanti. *Clinical Therapeutics*/Vol. 3, No. 4, 1980.



**manatt**

manatt | phelps | phillips

Isaac Miller, Esq.
September 23, 2011
Page 4

the glucosamine treated group during the first treatment week."[6] They concluded that "oral glucosamine sulfate was as effective as ibuprofen in short-term treatment control of patients with active knee OA, with better tolerance."[7]

- A double-blind randomized controlled trial of glucosamine 1500mg vs. ibuprofen 1200mg daily in 178 knee OA patients over 4 weeks found that 55% of patients treated with glucosamine were "symptom-free", as compared to 36% treated with ibuprofen. This difference was statistically significant.[8]

- Similarly, an open, multi-centered investigation of glucosamine in 1208 patients with osteoarthritis and found that 50-70% of patients treated with glucosamine experienced "complete therapeutic success."[9]

- A randomized controlled trial of 127 patients with knee OA found that 1200mg Chondroitin sulfate can result in statistically significant improvement in Lequesne's index score within 14 days of treatment.[10]

Scientific studies confirm that glucosamine and chondroitin alone or in combination help to repair cartilage by augmenting cartilage production and retarding the cartilage destruction seen in osteoarthritis. A placebo-controlled double-blind investigation of glucosamine in patients with OA found that glucosamine-treated patients had cartilage images that "showed a picture more similar to normal cartilage."[11]

Likewise, multiple clinical trials have demonstrated glucosamine/chondroitin's ability to exert structure-modifying effects on osteoarthritis. According to the European Medicines Agency, "joint space narrowing ("JSN") measured by plain x-ray is an acceptable primary

---

[6] Muller-FaBbender,1994: Glucosamine Sulfate Compared To Ibuprofen In Osteoarthritis Of The Knee. Hans Muller-Fabbender, Gerhard L. Bach, Wolfgang Haase, Lucio C. Rovati and Ivo Setnikar. *Osteoarthritis And Cartilage* (1994) 2, 61-69.
[7] Muller-FaBbender,1994
[8] Qiu, 1998: Efficacy and safety of glucosamine sulfate versus ibuprofen in patients with knee osteoarthritis. Qiu GX, Gao SN, Giacovelli G, Rovati L, Setnikar I. *Arzneimittelforschung.* 1998 May; 48(5):469-74.
[9] Tapadinhas, 1982: Oral Glucosamine Sulphate In The Management of Arthrosis: Report on A Multi-Centre Open Investigation In Portugal. Macario Joao Tapdinhas, Italo Croce Rivera And Angelo A. Binamini. *Pharmatherapeutica,* (1982), 3, 157.
[10] Bourgeois, 1998: Efficacy And Tolerability Of Chondroitin Sulfate 1200 Mg/Day Vs Chondroitin Sulfate 3 X 400 Mg/Day Vs Placebo. Pierre Bourgeois, Gerard Chales, Joel Dehais, Bernard Delcambre, Jean-Louis Kuntz, And Sylvie Rozenberg. *Osteoarthritis And Cartilage* (1998) 6, (Supplement A), 25-30.
[11] Drovanti, 1980: Therapeutic Activity Of Oral Glucosamine Sulfate In Osteoarthrosis: A Placebo-Controlled Double-Blind Investigation. A. Drovanti. *Clinical Therapeutics/*Vol. 3, No. 4, 1980.



Isaac Miller, Esq.
September 23, 2011
Page 5

endpoint for assessment of structural change".[12]  In the case of osteoarthritis, joint space width is considered to be a reliable indicator of cartilage thickness, and joint space narrowing indicates the degree of cartilage loss.[13]  Clinical trials have repeatedly demonstrated glucosamine and chondroitin's ability to provide structural modification, enhance the reparative process and rebuild joints.

In sum, there is ample scientific support for the claim that the active ingredients in Supple Beverage effectively treat osteoarthritis.

### Dosage Strength of Glucosamine and Chondroitin in the Supple Beverage:

Supple exclusively uses 1200mg Bioiberica CSb$^{TM}$ bovine trachea chondroitin, the most highly regulated chondroitin available on the market, derived from 100% US-sourced bovine trachea.  Bioiberica makes the only pharmaceutical grade chondroitin that is prescribed and regulated as a drug.  In fact, Bioiberica CSb$^{TM}$ chondroitin is considered to be the reference formulation against which other chondroitin products must show their bioequivalence because it is the only clinically studied and proven to be effective chondroitin formulation available today.[14]

Bioberica chondroitin has been in use in Europe since the early 1980's, is supplied to over 40 countries, and has been taken by over 13 million people and "can be found in joint care supplements that have been used by millions of people under many brand names worldwide."[15]  Supple Beverage's® 1500 mg pharmaceutical strength dosage of glucosamine is the same strength as the highly regulated and clinically proven glucosamine used as a drug in countries throughout the world.  (*http://www.donausa.com/news4.htm*)

### The Supple Beverage Aids In Weight Loss:

With respect to Supple's claims that the Supple Beverage helps in weight reduction, the Supple Beverage is a sweet, low calorie, low carbohydrate snack replacement.  It contains only 30 calories and provides over 100% of the daily value of several vitamins and minerals.  Supple® is formulated with rebaudioside-A, which provides an intensely sweet flavor and does

---

[12] European Medicines Agency, 2010: Committee for Medicinal Products for Human Use: Guideline on Clinical Investigation of Medicinal Products Used in the Treatment of Osteoarthritis, Aug 2010.
[13] Buckland-Wright, 1995: Joint Space Width Measures Cartilage Thickness in Osteoarthritis of the Knee: High Resolution Plain Film and Double Contrast Macroradiographic Investigation. Buckland-Wright et al. *Ann Rheum Dis* 1995;54:263-268.
[14] Verges, 2004: On the Bioavailability of Oral Chondroitin Sulfate Formulations: Proposed Criteria for Bioequivalence Studies. Verges, Josep, et al. *Proc. West. Pharmacol. Soc.* 47: 50-53 (2004)
[15] Bioberica White Paper. Clinical Studies and Scientific Validation for Chondroitin Sulfate: White Paper on CS b Bioactive.



**manatt**
manatt | phelps | phillips

Isaac Miller, Esq.
September 23, 2011
Page 6

not induce a glycemic response when ingested, making it attractive as a natural sweetener and a carbohydrate snack replacement in a carbohydrate-controlled diet. Low carbohydrate diets have been clinically proven to enhance weight loss.[16] Drinking a Supple Beverage instead of a higher calorie, less nutritious, drink or snack has obvious weight loss benefits.

Also, glucosamine helps regulate weight by effects on insulin sensitivity. An *in vitro* study by Machicao, et al. shows that glucosamine has a dose-dependent inhibitory effect on lipogenesis, which is an insulin-driven conversion of glucose into fat storage.[17] When fat storage is inhibited, glucose is consumed as fuel and weight gain is limited. In addition, Puente, et al. evaluated the effects of glucosamine on the rat brain and found that glucosamine paradoxically increased brain sensitivity to insulin, resulting in decreased food intake and decreased body weight.[18]

### US Glucosamine and Chondroitin Marketplace Is Riddled with Inferior Products:

The National Institutes of Health ("NIH") has taken a clear position on the pervasive problem of poor product quality glucosamine and chondroitin marketed in the US. In 2006, when determining what Chondroitin to use in the NIH funded Glucosamine/Chondroitin Arthritis Intervention Trial ("GAIT study"), NIH found that none of the major commercially available chondroitin products found in the United States were appropriate for use because of inconsistent purity, potency, and quality.[19] Significantly, the only source of chondroitin that was used in the GAIT study was Bioiberica CSb™ chondroitin (the chondroitin used in the Supple Beverage).[20]

The GAIT study report concluded: "In the United States, glucosamine and chondroitin sulfate are considered dietary supplements and are not held to the stringent standards of pharmaceutical manufacture. If these agents are to be widely used for the treatment of osteoarthritis, serious consideration must be given to their current regulatory status in order to ensure potency and purity. Studies have demonstrated substantial variation between the content listed on the labels of these products and the actual content."[21]

---

[16] Last, 2006: Low-Carbohydrate Diets. Last, et al. *American Family Physician*, 2006; vol 73, no 11, 1942-1948
[17] Machicao, 1990: Mannose, Glucosamine and Inositol Monophosphate Inhibit the Effects of Insulin on Lipogenesis. Machicao, et al. *Biochem J.* (1990) 266, 909-916.
[18] Puente, 2007: Paradoxically, Hypothalamic Glucosamine Infusion Reduces Food Intake and Limits Weight Gain while Enhancing Brain Insulin Activity. Puente, et al. American Diabetes Association 67th Annual Scientific Sessions (2007) abstract# 1579-P.
[19] Barnhill, 2006: Chondroitin Product Selection for the Glucosamine/Chondroitin Arthritis Intervention Trial. Barnhill et al. *J Am Pharm Assoc.* , vol 46, no 1, 14-24.
[20] Barnhill, 2006
[21] Clegg, 2006: Glucosamine and Chondroitin Sulfate and the Two in Combination for Painful Knee Osteoarthritis. Daniel O.Clegg, et al. *NEJM* 2006; 354;795-808.



**manatt**
manatt | phelps | phillips

Isaac Miller, Esq.
September 23, 2011
Page 7

Most recently, a comprehensive review published in the *Journal of Pharmacy and Pharmacology* documented several problems with the glucosamine and chondroitin market. First, the majority of the products studied did not meet label claims.[22] Of the 6 studies that in total evaluated 43 chondroitin products, only 13 products (30%) met label claims. Of the 9 studies that in total evaluated 70 glucosamine products, only 23 products (33%) met label claims. Of the 4 studies that in total evaluated 32 glucosamine/chondroitin combination products only 16 (50%) products met label claims.

Industry reports have also recognized the significant problem with quality in the glucosamine/chondroitin market. In their industry report on glucosamine and chondroitin, Nutraingredients.com found that over 80% of chondroitin[23] and 70-80% glucosamine[24] sold in the U.S. market is derived from China where there is no traceability to source, significant problems with product quality, purity, consistency, sanitation, and product falsification.

In light of the negative scientific data concerning the quality of glucosamine and chondroitin sold in the United States, consumers should be educated regarding these issues so that they can make informed purchasing decisions. Indeed, despite the considerable expense, Supple uses only high quality glucosamine and chondroitin sourced from Cargill (which is the only producer in the U.S. of 100% vegetarian derived glucosamine HCL) and Bioberica and is distinguished in the marketplace on that basis.

As noted above, Supple bases all of its advertising claims regarding the effectiveness of the Supple Beverage on a comprehensive body of evidence, including numerous published, peer-reviewed clinical studies concerning glucosamine and chondroitin. These studies were published in a scientific journals, were methodologically sound and were conducted and evaluated in an objective manner by qualified individuals, using procedures generally accepted in the profession to yield accurate and reliable results. Thus, the studies constitute competent and reliable scientific evidence for the efficacy of the Supple Beverage.

In your letter, you fail to cite or discuss any competent scientific evidence to support your claims that the claims regarding Supple Beverage's efficacy are false. In any legal proceeding, your client would have the burden of proving that the claims outlined in your letter are false. Without such evidence, you have no case. Unsubstantiated allegation and arguments do not support valid legal claims. If you have any scientific studies or evidence to support your allegations, please provide such evidence as soon as possible.

---

[22] Lockwood, 2011: The Quality of Commercially Available Nutraceutical Supplements and Food Sources. Lockwood, BG. *Journal of Pharmacy and Pharmacology* 2011, 63; 3-10
[23] Starling, 22 April: Counterfeit Material Could Tarnish Chondroitin Market. Shane Starling, NutraIngredients-usa.com, 22-April-2010.
[24] Starling, 16 April: Supply: Joining the Glucosamine Supply Gaps. Starling, Shane. Nutraingredients.com, 16-April-2010.



**manatt**
manatt | phelps | phillips

Isaac Miller, Esq.
September 23, 2011
Page 8

Supple is confident that any challenge to its advertising for the Supple Beverage – regardless of the forum – will end with the same conclusion reached by scientific studies described in this letter. Supple's advertisements are not false or misleading. To the contrary, they are based on scientific studies conducted to the highest standards. For that reason, Supple sees no reason to take any action in response to your demand for relief, including making changes to its advertisements or providing a refund to all California consumers who purchased Supple Beverage.

Supple prides itself on customer satisfaction. To that end, it offers its customers a money-back guarantee if the customer is not satisfied with the product and returns it within 60 days of purchase. Supple regrets that your client does not appear satisfied with the Supple Beverage. If your client made a retail purchase of the Supple Beverage, Supple will refund her the full purchase price. Let me know how your client would like to proceed with this offer.

Should you like to discuss this matter further, do not hesitate to give me a call. Nothing in this letter should be construed as an admission to any of the allegations in your letter or as a waiver of any of Supple's legal rights or remedies, all of which are expressly reserved.

Sincerely,

Brad W. Seiling
Manatt, Phelps & Phillips, LLP

BWS:pes

300717591.3