**MILSTEIN ADELMAN LLP**
Gillian L. Wade, State Bar No. 229124
gwade@milsteinadelman.com
M. Isaac Miller, State Bar No. 266459
imiller@milsteinadelman.com
2800 Donald Douglas Loop North
Santa Monica, California 90405
Telephone:   (310) 396-9600
Fax:             (310) 396-9635

Attorneys for Plaintiff,
Arlene Cabral and the Proposed Class

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARLEEN CABRAL, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>SUPPLE, LLC, a Connecticut Corporation; and DOES 1 through 100, inclusive,<br><br>                    Defendants. | CASE NO.: **5:12-cv-00085-MWF-OP**<br><br>**CLASS ACTION**<br><br>**MEMORANDUM IN REPLY TO DEFENDANT SUPPLE, LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Date:     December 3, 2012<br>Time:     10:00 am<br>Crtrm:    1600<br>Judge:    Hon. Michael W. Fitzgerald<br><br>Discovery Cutoff:     October 2, 2012<br>Pretrial Conference: February 4, 2013<br>Trial Date:              March 5, 2013 |

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...........................................................................................1

II.   THE RECORD EVIDENCE ESTABLISHES PREDOMINANCE...............2

    A.    The "Satisfied" Customer Fiction Permeating Defendant's
        Predominance Argument Is Irrelevant To The predominance
        Analysis ...........................................................................................2

        1.   Even Assuming Defendant's "satisfied" customer argument
            were relevant, it still fails because it does not present any
            *evidence* that individual issues predominate ...................3

        2.   Defendant's attack on Plaintiff for failing to submit consumer
            complaints is unavailing ...................................................6

    B.    Predominance Is Satisfied Because All Class Members Were
        Exposed To Defendant's False Claims...............................................7

        1.   This matter is entirely distinguishable from the cases Defendant
            cites where class-wide exposure could not be established................8

        2.   The message conveyed controls the predominance analysis—not
            differences in wording or format.....................................10

        3.   Defendant's attempt to defeat predominance by claiming Plaintiff
            misinterpreted its advertising is unavailing .....................12

    C.    Materiality Cannot Be Disputed Because Alleviating Arthritis Pain Is
        The Purpose For Which Supple Is Sold ...............................................15

    D.    Defendant's "Argument" That Reliance Cannot Be Presumed On A
        Class-wide Basis Fails ......................................................................18

III.  PLAINTIFF IS TYPICAL AND ADEQUATE.........................................20

IV.   A CLASS ACTION IS THE SUPERIOR METHOD OF ADJUDICATING
    THE CLAIMS AT ISSUE HERE  ...........................................................23

V.    CONCLUSION .........................................................................................25

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

# **TABLE OF AUTHORITIES**

## **FEDERAL CASES**

*Campion v. Old Republic Home Protection Co., Inc.*, (S. D. Cal. 2011)
   272 F.R.D. 517 ............................................................................................6

*Carter v. Webb* (C.D. Cal. 2011)
   272 F.R.D. 489 ..........................................................................................23

*Castro Valley Union 76, Inc. v. Vapor Systems Techs., Inc.* (N.D. Cal. Oct. 22, 2012)
   2012 WL 5199458 ........................................................................................8

*Cole v. Asurion Corp.* (C.D. Cal. 2010)
   267 F.R.D. 322 ..........................................................................................19

*Ellis v. Costco Wholesale Corp.* (9th Cir. 2011)
   657 F.3d 970 ........................................................................................22, 23

*Faralli v. Hair Today, Gone Tomorrow* (N.D. Oh. Jan. 10, 2007)
   2007 WL 120664 ..........................................................................................5

*Godec v. Bayer Corp.* (N.D. Ohio Nov. 11, 2011)
   2011 WL 5513202 ........................................................................................3

*Guido v. L'Oreal, USA, Inc.* (C.D. Cal. May 7, 2012)
   2012 WL 1616912 ........................................................................................2

*Hanlon v. Chrysler Corp.* (9th Cir. 1998)
   150 F.3d 1011 ..................................................................................2, 23, 25

*Hanon v. Dataproducts Corp.* (9th Cir. 1992)
   976 F.2d 497 ..............................................................................................22

*Hoffman v. Supple, LLC*, No. (D.N.J. 2012)
   2:12-cv-00920-FSH-PS ................................................................................7

*In re Con-Agra Peanut Butter Prods. Liab. Litig.* (N.D. Ga. 2008)
   251 F.R.D. 689 ..........................................................................................23

*In re Ferrerro Litig.* (S.D. Cal. 2011)
   278 F.R.D. 552 ....................................................................2, 7, 12, 18, 20

*In re Phenylpropanolime (PPA) Prods. Liab. Litig.* (W.D. Wash. 2003)
   214 F.R.D. 614 ..........................................................................................23

*In re: POM Wonderful LLC Marketing & Sales Litig.*, RZ, (C.D. Cal. Sept. 28, 2012)
   2:10-ml-02199-DDP................................................................11, 17, 18

*Johns v. Bayer Corp.*, (S.D. Cal. 2012)
   280 F.R.D. 551 ..............................................................................7, 18, 20

*Johnson v. General Mills, Inc. (C.D. Cal. 2011)*
   275 F.R.D. 282 ......................................................3, 7, 12, 17, 19, 20, 25

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

*Konick v. Time Warner Cable* (C.D. Cal. Nov. 24, 2010)
  2010 WL 8471923 ...................................................................................5

*L.G. Electronics U.S.A., Inc. v. Whirlpool Corp.* (N.D. Ill. 2009)
  661 F. Supp. 2d 940 .............................................................................17

*Lima v. Gateway, Inc.* (C.D. Cal. 2010)
  710 F.Supp.2d 1000 .............................................................................10

*Mazza v. Amer. Honda Motor Co., Inc.* (9th Cir. 2012)
  666 F.3d 581 ........................................................................................19

*Pilgrim v. Universal Health Card, LLC* (6th Cir. 2011)
  660 F.3d 943 ..........................................................................................5

*Rodriguez v. Hayes* (9th Cir. 2010)
  591 F.3d 1105 ......................................................................................22

*Stearns v. Ticketmaster Corp.* (9th Cir. 2011)
  655 F.3d 1013 ......................................................................................19

*Wiener v. Dannon Co., Inc.* (C.D. Cal. 2009)
  255 F.R.D. 658 .................................................................................7, 19

*Williams v. Gerber Prods. Co.* (9th Cir. 2008)
  552 F.3d 934 ..................................................................................10, 16

*Yokoyama v. Midland National Life Ins. Co.* (9th Cir. 2010)
  594 F.3d 1087 ......................................................................................16

*Ziesel v. Diamond Foods, Inc.* (N.D. Cal. June 7, 2011)
  2011 WL 2221113 ...............................................................................18

*Zinser v. Accufix Research Institute, Inc.* (9th Cir. 2001)
  253 F.3d 1180 ......................................................................................25

**STATE CASES**

*Akkerman v. Mecta Corp., Inc.* (2007)
  152 Cal.App.4th 1094 ...........................................................................4

*Caro v. Proctor & Gamble Co.* (1993)
  18 Cal.App.4th 644 .............................................................................15

*Cohen v. DIRECTV, Inc.* (2009)
  178 Cal.App. 966 ..................................................................................9

*Davis-Miller v. Automobile Club of Southern California* (2011)
  201 Cal.App.4th 106 .............................................................................9

*In re Vioxx Class Cases*, , 120 (2009)
  180 Cal.App.4th 116..............................................................................5

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

iii

*Pfizer v. Sup. Ct.* (2010)
  182 Cal.App.4th 622 ................................................................................. 8

**FEDERAL STATUTES**

Federal Rules of Civil Procedure

  23(a)(3) ................................................................................................. 20

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

# I.     __INTRODUCTION__

Despite the considerable advantage of having nearly four months to oppose Plaintiff's motion for class certification, Defendant's opposition raises points that actually *confirm* the class should be certified, fails to dispute several key elements established by Plaintiff, and relies on inadmissible, irrelevant and late-disclosed witnesses and evidence that cannot be considered.

Conceding Plaintiff has established numerosity and commonality, Defendant argues the remaining Rule 23(a) requirements and the predominance and superiority requirements of Rule 23(b)(3) are not met.  Without any actual *evidence* to undermine class certification, Defendant retreats to arguments based on conjecture, and ignores critical undisputed facts. Straining to convince the Court class treatment is improper where the proposed class includes "satisfied" customers, Defendant offers zero proof that any such Supple customers even exist.  Moreover, while rambling on about "mixed messages" and Plaintiff's supposed "misinterpretation" of its advertising, Defendant sticks its head in the sand in ostrich-like fashion as to the fact that *every single class member had to be exposed to Defendant's advertising in order to purchase the product*, and that—as Defendant and Defendant's own counsel plainly have agreed and Magistrate Judge Parada has found—the *only* reason the product is marketed and sold is to treat joint pain caused by arthritis.  These facts alone confirm predominance and wipe out any arguments challenging class-wide exposure, materiality, adequacy and typicality.  Defendant's other argument that the existence of a refund program defeats superiority is contrary to prevailing case law and disregards the fact that its 60-day money back guarantee is an illusory remedy for any putative class member who purchased the product more than 2 months ago.

Defendant's offering of expert opinion about the science and clarification that a single infomercial ran during the class period confirm this case will be prosecuted *and* defended with common evidence.  With discovery now closed, there can be no question the merits issues in this case will turn on a closed-set of science and expert

REPLY ISO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

testimony, which by its very nature is susceptible to class-wide proof. Accordingly, this Court should grant Plaintiff's motion for class certification.

## II.      THE RECORD EVIDENCE ESTABLISHES PREDOMINANCE

### A.      The "Satisfied" Customer Fiction Permeating Defendant's Predominance Argument Is Irrelevant To The Predominance Analysis

Defendant's predominance analysis relies heavily on the bald assertion that approximately half of its customers are "satisfied" (i.e. received the advertised benefits of Supple).  However, whether or not "satisfied" customers exist has no bearing on the predominance inquiry. Indeed, the predominance requirement "focuses on the relationship between the common and individual issues." *In re Ferrerro Litig.*, 278 F.R.D. 552, 559 (S.D. Cal. 2011) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)).  This requirement is satisfied, and certification under Rule 23(b)(3) is proper, where "common questions present a significant portion of the case and can be resolved for all members of the class in a single adjudication." *Id.*; *see also Guido v. L'Oreal, USA, Inc.*, 2012 WL 1616912, at *9 (C.D. Cal. May 7, 2012) ("'When one or more of the central issues in the action are common to the class and can be said to predominate,' a class action will be considered proper 'even though other matters will have to be tried separately.'").

In this class action alleging violations of the UCL, FAL, and CLRA, the proper focus of the predominance inquiry is on whether Plaintiff and the class were exposed to material statements in Defendant's advertising, and the extent to which the veracity of such claims can be determined on a class-wide basis. Whether or not putative class members were actually "satisfied" with Supple—a determination which establishes absolutely nothing about the harm that occurs at the time of purchase—is irrelevant to determining (1) what misrepresentations class members were exposed to, and (2) whether a "reasonable man" would have attached importance to the existence or nonexistence of such misrepresentations (i.e. deemed the representations "material")

such that class-wide reliance may be presumed.

Defendant's "satisfied" customer analysis is equally useless in deciphering whether the falsity of Defendant's bold advertising claims is subject to class-wide proof. To this end, Defendant admits it is relying on the GAIT Study to demonstrate the veracity of its advertising and establish Supple's effectiveness. *See* Def's Mot. at 7 ("Supple relies on the GAIT Study here to show that Plaintiff cannot establish on a class-wide basis that the product was ineffective for all class members. The GAIT Study itself shows that arthritis pain was reduced in at least some consumers taking Supple."). In doing so, Defendant concedes the truth or falsity of its advertising will be determined not on the basis of speculation about a repeat purchaser's results from taking Supple, but, rather, on the basis of scientific evidence which is inherently class-wide. *See Johnson v. General Mills, Inc., 275 F.R.D. 282, 289 (C.D. Cal. 2011)* ("General Mills could defeat the claims of the entire class by proving that YoPlus promotes digestive health in the manner that General Mills allegedly represented. The digestive health benefit of YoPlus, or the lack thereof, is a common issue that is particularly appropriate for class-wide resolution because it will turn on complex and expensive scientific evidence and expert testimony."); *see also Godec v. Bayer Corp.*, 2011 WL 5513202, at *5 (N.D. Ohio Nov. 11, 2011) (holding that whether Bayer "delivered a product that did not conform to its description, is a scientific question common to the class members").

In sum, Defendant's "satisfied" customer analysis is irrelevant to determining whether individualized issues predominate with respect to the claims for relief asserted in this lawsuit.

### 1.   Even assuming Defendant's "satisfied" customer argument were relevant, it still fails because it does not present any *evidence* that individual issues predominate

Assuming *arguendo* that the purported existence of "satisfied" customers were somehow relevant to determining whether predominance has been satisfied,

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

Defendant's argument fails because it offers no proof satisfied customers actually exist. Defendant's assertion that 48% of class members are "satisfied" is premised entirely on the fact that they are repeat purchasers, not on any actual *evidence* that class members received Supple's advertised benefits—i.e. a sworn declaration attesting that Supple effectively treated the customer's arthritic joint pain.  The mere fact that a putative class member was a repeat purchaser does not, in and of itself, establish he or she received any of the advertised benefits of Supple.  For instance, Plaintiff—who was charged for multiple shipments of Supple—would be counted among Defendant's repeat purchasers, and she clearly is not a "satisfied" customer. Moreover, Defendant concedes in its opposition that repeat purchases can result simply because a customer fails to cancel the auto-ship program in time.  Def's Opp. at 11 n. 4.  When viewed in this light, it is readily apparent Defendant's "satisfied" customer argument is nothing more than speculation about class members' actual experiences with the product, and certainly does not rise to the level of *evidence*. Indeed, if "thousands" of satisfied customers exist, where are their declarations? What are their names? Are they even in the class? Submitting cherry-picked portions of so called "testimonials," redacting key information, and baldly asserting repeat purchases equal customer satisfaction is far from the proof needed to even make this argument.

Defendant's failure to present any actual *evidence* renders the instant action easily distinguishable from the cases Defendant cites in support of its "satisfied" customer argument.[1]  For instance, in *Vioxx*, Plaintiffs brought UCL, FAL, CLRA and

---

[1] Defendant cites 3 additional cases in this section of its opposition—*Akkerman*, *Faralli*, and *Pilgrim*—none of which advance its argument in any meaningful way. With respect to the first case, the *Akkerman* court did not, as Defendant suggests, deny certification because Plaintiff failed to establish that representations about the efficacy and safety of ECT were false as to all class members.  Rather, the court reached the unremarkable conclusion that Plaintiff's class definition was overly broad because it included individuals who were never exposed to the representations at issue, were properly advised of all the risks of ECT, relied upon state approved consent forms and who had success with ECT.  *See Akkerman v. Mecta Corp., Inc.*, 152 Cal.App.4th

REPLY ISO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

unjust enrichment claims against Merck & Co., Inc. ("Merck"), alleging that, due to undisclosed cardiovascular risks, Vioxx was less safe than other less expensive pain relievers. *In re Vioxx Class Cases*, 180 Cal.App.4th 116, 120 (2009). At the class certification stage, the court held plaintiffs could not proceed on the theory that Vioxx was less safe than other pain relievers, because such a determination was dependent on each individual's specific medical needs and history, and, thus, was not subject to class-wide proof. *Id.* at 126-27. In support of this holding, the court cited defendant's "impressive quantity of documentation designed to establish that individual, rather than common, issues prevailed," including: (1) declarations from doctors setting forth that the effectiveness and safety of Vioxx in comparison to other pain relievers depended upon numerous patient- and physician-specific issues, and (2) data from larger Third-Party Payors ("TPP") showing they covered prescriptions for Vioxx only if it had been determined that, for each particular patient, Vioxx was safer, or more effective, than traditional pain relievers. *Id.* at 124-25. Similarly, in *Konick* and *Campion*, class certification was denied where defendants presented affirmative evidence demonstrating the allegedly false representations at issue in the case were

1094, 1101 (2007) (holding that plaintiff was not an adequate class representative because he was never exposed to the allegedly false representations, and that, even if adequacy were satisfied, the class would still be "too amorphous for certification" because it would "depend on individual determinations of potentially thousands of medical 'intermediaries' who are not defendants or parties to [the] action and whose advice would necessarily 'vary' for each patient"). Defendant's citation to the other two cases is even further afield. *See Faralli v. Hair Today, Gone Tomorrow*, 2007 WL 120664 (N.D. Oh. Jan. 10, 2007) (holding that individual issues predominated where plaintiff's claims involved professional hair removal services which were customized to each class member's skin tone and hair type and targeted to specific body locations, meaning that individual customer's results would naturally vary); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011)(denying certification to Plaintiffs seeking to represent a nationwide class of consumers, solely on the basis that individual issues predominated because each class member's claim would be governed by his or her State's law and differences in state consumer protection overwhelmed any common issues).

Milstein Adelman, LLP
2800 Douglas Loop North
Santa Monica, California 90405

actually true for some class members.  *See Konick v. Time Warner Cable*, 2010 WL 8471923 (C.D. Cal. Nov. 24, 2010) (Plaintiffs alleging TWC's marketing materials misrepresented that there would be no price increases or service interruptions after TWC acquired Adelphia's customer accounts were deemed atypical, and class certification denied, where Defendant presented affirmative evidence demonstrating that "a large component of the proposed class did not experience any raises in price or deprivations in service" and would have no right to recover on the asserted legal claims); *Campion v. Old Republic Home Protection Co., Inc.*, 272 F.R.D. 517 (S. D. Cal. 2011) (class certification denied where insured contended insurer made misrepresentations and omissions regarding its claim handling practices to every person who purchased a home warranty plan, and insurer presented evidence that most class members' claims under the warranty policy were covered (notwithstanding the alleged unlawful delegation of coverage decisions), and Plaintiff conceded that denial of a claim did not, in and of itself, establish a misrepresentation occurred).

Whereas in *Vioxx*, *Konick*, and *Campion* the evidence of predominate individual issues was staggering, here, despite purportedly having access to tens of thousands of "satisfied" customers, Defendant curiously did not file a single sworn declaration from a customer establishing that he or she actually received the advertised effect from taking Supple.  Because Supple has utterly failed to produce any admissible evidence in support of its "satisfied" customer argument, it should be summarily rejected.

## 2.   Defendant's attack on Plaintiff for failing to submit consumer complaints is unavailing

In presenting the "satisfied" customer fiction, Defendant cites its "unsolicited testimonials"—which cannot be verified for accuracy, amount to rank hearsay and are not properly before the Court because Defendant never disclosed the individuals who purportedly provided the testimonials as witnesses, and, actively concealed their

REPLY ISO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

identities during discovery[2]—and implies that Plaintiff has somehow failed to meet an evidentiary burden by not producing evidence of consumer complaints.[3]  Defendant does not cite any authority for the proposition that a plaintiff in a false advertising case has the burden to present consumer complaints in order to meet certification requirements, because no such authority exists.  Defendant also ignores the evidence presented by Plaintiff that California *class members* have requested and received approximately $1,150,000 in chargebacks and refunds during the Class Period.  *See* Pl's Mot. at 23 n. 21.  Moreover, Defendant produced a refund log providing the date, refund amount, and reason for returning the product for 10,220 *class members*.  *See* Miller Decl. ¶3, Ex. A.  Of these 10,220 refunds, the overwhelming majority requested their money back because they received "No Results" or simply did not want the product.  *Id.*  Clearly, the thousands of class members who, like Plaintiff, received "no results" from the product are *not* "satisified" customers.

**B.    Predominance Is Satisfied Because All Class Members Were Exposed To Defendant's False Claims**

No matter how hard Defendant tries, there is simply no plausible argument here that class members were not exposed to Defendant's false and misleading advertising. Defendant cannot escape the simple fact that *every single class member* was required to have *direct contact* with Defendant and Defendant's advertising *prior* to purchasing Supple.  This fact alone confirms predominance.  *See Johns v. Bayer Corp.*, 280 F.R.D. 551, 557-58 (S.D. Cal. 2012) ("[W]hen plaintiffs are exposed to a common advertising campaign, common issues predominate."); *see also Wiener v. Dannon Co.*,

---

[2] *See* Plaintiff's Objections and Motion to Strike Portions of the Declaration of Peter Apatow filed concurrently herewith.

[3] Defendant's assertion throughout its motion that there are no consumer complaints is disingenuous at best, and borders on fraud on the Court.  Indeed, as Defendant is well aware, not only are there other consumer complaints, there was also another class action lawsuit filed earlier this year alleging Defendant's marketing and advertising violates New Jersey's consumer protection act.  *See Hoffman v. Supple, LLC*, No. 2:12-cv-00920-FSH-PS (D.N.J. 2012) (complaint filed January 12, 2012).

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

*Inc.*, 255 F.R.D. 658, 669 (C.D. Cal. 2009); *Johnson*, 275 F.R.D. at 288-89; *In re Ferrerro Litig.*, 278 F.R.D. at 560.

> **1.    This matter is entirely distinguishable from the cases Defendant cites where class wide exposure could not be established**

The cases Defendant cites in support of its argument that predominance is not satisfied because of a lack of class-wide exposure have no application in a UCL case such as this, where every class member had to have viewed Defendant's advertising in order to purchase the product.  In *Castro Valley*, a gas station owner brought a class action against a gas nozzle manufacturer alleging defective gas pump nozzles.  *See Castro Valley Union 76, Inc. v. Vapor Systems Techs., Inc.*, 2012 WL 5199458, at *1-*2 (N.D. Cal. Oct. 22, 2012).  Plaintiff admitted in a declaration that he had not relied on any written representations from defendant in determining whether or not to purchase defendant's gas pump nozzles.  *Id.* at *3.  The court ultimately held that individual issues predominated because, as Plaintiff's own expert conceded, whether specific oral and written representations regarding nozzles were made to particular station owners, whether those representations were made by defendant or other contractors or distributors, and whether station owners relied were all issues that needed to be determined on a case-by-case basis.  *Id.* at *8-*10.

In *Pfizer*, the court denied class certification where the record evidence proved that most class members were never exposed to the misrepresentation at issue.  *Pfizer v. Sup. Ct.*, 182 Cal.App.4th 622, 6313-32 (2010).  Specifically, the court found the claim that using mouthwash is as effective as floss appeared on only 15 of defendant's 34 different types of mouthwash, and that, of those bottles bearing this claim, only a few actually shipped during the class period.  *Id.*  The court also noted defendant ran only four television commercials for a short period of time.  *Id.*  The court concluded it was more likely class members purchased the mouthwash because they were brand-loyal customers, rather than reliance on the challenged representation.  *Id.*

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

Defendant's uniform, national marketing campaign stands in stark contrast to the specific claim made in *Pfizer* for a short period of time regarding a product which had been available for decades *without* the subject claim in the well-developed mouthwash market.

In *Davis-Miller*, motorists brought a class action against a roadside assistance company, alleging violations of the UCL and CLRA in connection with defendant's operation of a roadside battery service program. *Davis-Miller v. Automobile Club of Southern California*, 201 Cal.App.4th 106, 110 (2011). In holding that putative class members were not uniformly exposed to misrepresentations regarding the roadside battery service program, the court noted: (1) the program was advertised in *Westways Magazine* in only one city, only during the second year of the class period and only a small number of times thereafter; (2) during the 9-year class period, program ads were included in Member Saver guides, which were only available to walk-in customers for about 16 months; (3) online ads for the program received a minimal amount of "hits" annually; and (4) numerous customers provided declarations stating they had never seen an ad for the roadside battery program. *Id.* at 114, 125-36. *Davis-Miller* is entirely inapposite to the current matter which involves a large-scale, coordinated marketing campaign spanning various media, and where, by virtue of the fact that Supple is a direct response product, each consumer has to be exposed to Defendant's advertising prior to purchasing the product.

In *Cohen*, DIRECTV was accused of UCL and CLRA violations resulting from advertising claims that its high definition ("HD") television broadcasts would meet certain technical specifications, which plaintiffs alleged induced them to sign up with DIRECTV. *Cohen v. DIRECTV, Inc.*, 178 Cal.App.4th 966, 970 (2009). In opposing class certification, Defendant submitted evidence that the proposed class included subscribers who *never* saw DirectTV ads or representations of any kind prior to purchasing defendant's HD services, subscribers who only saw and/or relied upon ads that contained no mention of technical specifications, and subscribers who purchased

1   DirectTV HD based on word of mouth or because they saw it displayed in a store or at

2   someone's home.  *Id.* at 979.  Based on this evidence, the court held common issues

3   of fact did not predominate because "the members of the class stand in a myriad of

4   different positions insofar as the essential allegation in the complaint is concerned,

5   namely, that DIRECTV violated the CLRA and the UCL by inducing subscribers to

6   purchase HD services with false advertising."  *Id.*

7         Unlike in *Castro Valley*, *Pfizer*, *Davis-Miller*, and *Cohen*, Defendant fails to

8   present any *evidence* proving that class members were not exposed to the

9   misrepresentations at issue in this matter.

10              **2.    The message conveyed controls the predominance analysis—**
11                      **not differences in wording or format**

12        The overall message conveyed by Defendant's marketing and advertising—not

13  a specifically worded false statement or the different ways a defendant says the same

14  thing—is what matters.  Yet Defendant takes Plaintiff's net impression analysis, turns

15  it into a single advertising statement, and asserts that, because this single, fictitious

16  advertising statement does not appear anywhere in Defendant's advertising, Plaintiff

17  cannot establish class-wide exposure.[4]  This flawed assertion overlooks the

18  indisputable *evidence* that Defendant presented a single, uniform false and misleading

19  message across all forms of media throughout the class period.[5]  *See* Declaration of

20

21  [4] To the extent Defendant argues Plaintiff's analysis is flawed because it focuses on
    Defendant's overall marketing message, as opposed to "a single Supple ad,"
22  Defendant's argument is unavailing.  Indeed, California case law is clear that it is the
    overall message conveyed by Defendant's marketing and advertising that matters.  *See*
23  *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939-40 (9th Cir. 2008); *Lima v.*
    *Gateway, Inc.*, 710 F.Supp.2d 1000, 1008 (C.D. Cal. 2010).
24
    [5] Defendant's argument that Plaintiff must offer survey or other evidence supporting
25  her interpretation of the "implied" message in Defendant's advertising misses the
    mark.  This case is not, nor has it ever been, about an implied advertising message.
26  Indeed, the evidence submitted in support of class certification (which Defendant
    ignores) presents *express* advertising claims all of which support Plaintiff's net
27  impression argument.  Wade Decl. ¶16, Ex. 14; *id.* ¶24, Ex. 22; *id.* ¶58, Ex. 56;
28

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

REPLY ISO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

Gillian L. Wade ISO Class Certification ("Wade Decl.") ¶16, Ex. 14 (chart comparing closed-captioning transcripts from Defendant's infomercial transcripts) ¶24, Ex. 22 (comparing claims on Defendant's official website, www.supplebodies.com, and other websites controlled by Defendant, including www.suppleonline.com); Declaration of Peter Apatow In Support of Defendant's Opposition to Class Certification ("Apatow Decl.") ¶28, Ex. F (transcript of Supple, LLC's "2007 infomercial"), ¶30, Ex. Ex. G (transcript of Supple, LLC's "2011 infomercial").  Unable to counter this evidence, Defendant merely states (without any supporting evidence) "the wording and the messages conveyed in the advertising varied by medium and over time."  Def's Opp. at 13.  Even if this were true (and it is not), as this Court recently made clear, "[a]s in other consumer fraud cases, the mere fact that [Defendant] used several different advertisements to convey its [advertising] message is not dispositive."  *In re: POM Wonderful LLC Marketing & Sales Litig.*, No. 2:10-ml-02199-DDP-RZ, Dkt. No. 111, at 8 (C.D. Cal. Sept. 28, 2012) ("*In re: POM Wonderful LLC*") (order certifying class where 596 different advertisements ran in 9 different kinds of media during the class period, and plaintiffs challenged only a subset of claims regarding the health benefits of POM Juice).  Elaborating on this point, the *POM* court stated:

> A false or misleading advertising campaign need not "consist of a specifically-worded false statement repeated to each and every [member] of the plaintiff class."  **Indeed, "the class action mechanism would be impotent if a defendant could escape much of his potential liability for fraud by simply altering the wording or format of his misrepresentations across the class of victims."**

*Id.* (emphasis added).  Despite this precedent, Defendant urges the Court to hold the predominance requirement is not satisfied because the wording of its infomercials and internet advertising purportedly varied slightly over the class period. Where, as here,

---

Apatow Decl. ¶28, Ex. F; *id.* ¶30, Ex. G.

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

a defendant uniformly and pervasively disseminates marketing and advertising touting the efficacy of its product throughout the class period, and every class member is necessarily exposed to a single, consistent advertising message, common factual issues predominate and class certification is routinely granted.  *Id.; Johnson*, 275 F.R.D. at 288-89; *In re Ferrerro Litig.*, 278 F.R.D. at 560.

### 3.   Defendant's attempt to defeat predominance by claiming Plaintiff misinterpreted its advertising is unavailing

Defendant's argument that Plaintiff somehow misinterpreted its advertising in a way that is inconsistent with what a reasonable consumer would have believed is directly contradicted by the evidence in this case.  As established in the record evidence, Defendant's "2007 infomercial" unambiguously discusses Supple's purported ability to treat arthritis:

- "If you suffer from joint pain, arthritis, back pain, carpal tunnel, gout, fibromyalgia, or if you just want help losing weight, then this is a show you do not want to miss, so stay with us."
- "Our glucosamine is clinically proven to rebuild damaged cartilage cells.  It actually creates new cartilage cells and protects existing cartilage."
- "It's our chondroitin that's clinically proven effective to reduce joint space narrowing, that's clinically proven to reduce swelling and inflammation, and that protects your joints."
- "So Supple's ingredients do have disease-modifying qualities…Let's be clear, what do you mean by disease-modifying? Disease-modifying for arthritis pain, it's something that completely reverses and halts the disease process."
- "I'm not talking about masking the pain, not pain that just comes and goes. No waiting for months to feel the difference.  We're not talking about putting dangerous chemicals into your body.  I'm talking about beating your arthritis by rebuilding your joints and restrengthening your body."

Apatow Decl., Ex. F.[6]  The same advertising message is carried over into the "2011 infomercial," which (1) proclaims Supple works for anyone suffering from arthritis,

---

[6] Peter Apatow's declaration actually *strengthens* Plaintiff's class-wide exposure and reliance arguments.  As Apatow explained in his declaration, from December 2, 2007 (the beginning of the class period) to October 28, 2011, Supple only aired the "2007 infomercial."  Declaration of Peter Apatow In Support of Defendant's Opposition to Class Certification ("Apatow Decl.") at ¶¶28, 30.  Accordingly, anyone who purchased Supple from Defendant's infomercial during this nearly 4-year time period

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

1    osteoarthritis, rheumatoid arthritis, and fibromylgia; (2) identifies Supple's key

2    ingredients as "healing agents that actually reverse the cartilage breakdown that

3    causes joint pain"; and (3) portrays Peter Apatow as an "arthritis survivor," who

4    suffered from severe, immobilizing arthritis for decades, until he started taking Supple

5    which completely relieved his arthritis pain.   Apatow Decl., Ex. G.

6         If Plaintiff has somehow misinterpreted Defendant's advertising as claiming to

7    treat arthritis, then so has Defendant, Defendant's counsel, Judge Parada, and the

8    ESRP.   In Monita Poudyal's "rebuttal" report,[7] she dedicates three pages to

9    setting forth the "drug mentions" (i.e. entries on the NAMCS survey of a

10   pharmaceutical agent for "prevention, diagnosis, or treatment") for glucosamine

11   hydrochloride and chondroitin sulfate in the 2009 NAMCS survey.  *See* Declaration of

12   Monita Poudyal in Support of Defendant's Opposition to Class Certification

13   ("Poudyal Decl.") ¶¶18-25.   Along these lines, she also asserts that a subset analysis

14   of the GAIT Study demonstrates Supple effectively treats arthritis for consumers with

15   moderate-to-severe pain.  *Id.* ¶¶28-38.   Defendant is thus offering the number of times

16   glucosamine and/or chondroitin sulfate were prescribed or recommended for the

17   "prevention" or "treatment" of arthritis, and the GAIT Study's purported findings

18   regarding the treatment of moderate-to-severe arthritic knee pain, as evidence of

19   whether or not Supple is capable of working as advertised (i.e. treating arthritic joint

20   pain).  Moreover, Defendant's own counsel confirmed the pervasive "comfort,

21   _____

22   was necessarily exposed to the same false and misleading advertising message.
     Moreover, despite the addition of customer testimonials and a 60-day money back
23   guarantee, it is clear that Defendant's "2011 infomercial"—the only other version that
     was "rolled out" across the nation during the class period —relayed a virtually
24   identical message regarding the ability of Supple's fast-acting ingredients to
     effectively treat arthritis.  *See* Apatow Decl., Ex. G.
25   [7] As set forth in Plaintiff's Motion to Strike the Declaration of Monita Poudyal in
26   Support of Defendant's Opposition to Class Certification filed concurrently herewith,
     Poudyal's declaration must be stricken because it is not intended *solely* to rebut or
27   contradict the findings of Plaintiff's expert reports as required under Federal Rule of
     Civil Procedure 26(a)(2)(D)(ii), and she was never designated as an expert.
28

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

lubricate, & rebuild your joints'' statement—an advertising theme featured prominently in each of Defendant's infomercials, across all of its internet advertising, and on the Supple labeling—means "Supple effectively treats arthritis." *See* Wade Decl. ¶58, Ex. 56 (9/23/11 Letter from Brad Seiling Responding to Plaintiff's CLRA letter) ("Numerous scientific studies and clinical data support the fact that glucosamine and chondroitin can alleviate the symptoms ("comfort and lubricate") of osteoarthritis ("OA") and also provide structure modification ("rebuild joints") to alter the course of the disease.").  In fact, this is not the only time Defendant has taken the position that its advertising is about treating arthritis.  *See* Miller Decl. ¶4, Ex. B (Letter from Supple, LLC responding to the BBB's Electronic Retailing Self-Regulation Program inquiry into its advertising, stating that "The overwhelming evidence in both clinical trials and meta-analyses is that glucosamine does support joint health and offers substantial symptomatic relief of OA [osteoarthritis] symptoms.").

Moreover, the magistrate judge in this action reached a similar interpretation in ruling on Plaintiff's motion to compel the names and addresses of putative class members, where—after Defendant argued that *the only reason anyone would purchase Supple is because they suffer from arthritis*—Honorable Oswald Parada held:

> Here, although the disclosure of mere contact information, such as names and addresses, does not unduly interfere with one's right to privacy, the disclosure of the requested contact information goes beyond just 'mere contact information.' *The disclosure of the requested information necessarily involves the disclosure of the current medical condition of Defendant's customers given that the sole purpose of Defendant's product is to help alleviate arthritis pain*. As a result, there is a heightened expectation of privacy and a more serious invasion of privacy.

Miller Decl. ¶6, Ex. D (Magistrate Judge Oswald Parada's Order re: Plaintiff's Motion to Compel Response to Request for Production of Documents) (emphasis added).

The assertion that Plaintiff has misinterpreted Defendant's advertising does not pass the straight face test, because there is nothing to interpret. If Plaintiff misunderstood Defendant's advertising, so did everyone else, including Apatow's wife/business partner/defense expert Monita Poudyal, Defendant's own counsel, Judge Parada, and the ESRP. In reality, Plaintiff understood the advertising in the exact way Defendant intended: Supple's fast-acting ingredients are "clinically proven effective" to alleviate arthritis pain. Miller Decl. ¶5, Ex. C (Cabral Depo. at 50:1-18, 50:24 – 51:2, 52:24 – 53:10).

## C.    Materiality Cannot Be Disputed Because Alleviating Arthritis Pain Is The Purpose For Which Supple Is Sold

Defendant's argument that materiality varies from class member to class member borders on the absurd. In making this argument, Defendant relies heavily on *Vioxx*, which, as set forth at length above, is entirely distinguishable from the current matter, (*see supra* II.A.1), [8] and raises four points in an attempt to demonstrate materiality varies from consumer to consumer in this case.

Defendant begins with the flawed argument that "a statement regarding arthritis

---

[8] The other cases cited by Defendant are equally unpersuasive. For instance, in *Caro v. Proctor & Gamble Co.*, 18 Cal.App.4th 644 (1993), plaintiff alleged defendants violated the UCL, FAL, and CLRA by misrepresenting that their orange juice was "fresh." *Id.* at 668. The court held there was no material misrepresentation to plaintiff, because he testified at his deposition that he did not believe defendants' product to be "fresh" at the time of purchase. *Id.* Accordingly, the plaintiff in *Caro* was not typical, because he was not even a member of the class he sought to represent. *Id.* at 664-64. In stark contrast, Cabral testified that she believed Defendant's uniform marketing message—Supple's fast-acting key ingredients are "clinically proven effective" to treat arthritis—to be true, and that she would not have purchased the product but for the claims on Defendant's infomercial. Miller Decl. ¶5, Ex. C (Cabral Depo. at 50:1-18, 50:24 – 51:2, 52:24 – 53:10). The fact that Defendant is even attempting to analogize this case to *Caro* is curious.

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

1  would not be material to someone without arthritis." Def's Mot. at 16-17. First, in

2  determining materiality, California consumer protection laws take an objective

3  approach of the *reasonable* consumer, not the particular consumer. *See Williams v.*

4  *Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *see also Yokoyama v. Midland*

5  *National Life Ins. Co.,* 594 F.3d 1087, 1089, 1094 (9th Cir. 2010) ("[T]here is no

6  reason to look at the circumstances of each individual purchase in this case, because

7  the allegations of the complaint are narrowly focused on allegedly deceptive

8  provisions of Midland's own marketing brochures, and the fact-finder need only

9  determine whether those brochures were capable of misleading a reasonable

10  consumer."). Defendant ignores this case law, and instead focuses on a hypothetical

11  particular consumer (i.e. a consumer without arthritis who nevertheless purchases

12  Supple for $90).

13      Aside from being improper under California law, Defendant's argument also

14  directly contradicts the position Defendant took earlier in the case and its own expert's

15  testimony. In opposing Plaintiff's motion to compel, Defendant prevailed by arguing

16  *the only reason anyone would purchase Supple is because they suffer from arthritis*.

17  *See supra* II.B.3. Moreover, Defendant claims in each and every infomercial that

18  Supple effectively treats multiple types of arthritis, and Defendant's own expert relies

19  on this very fact to dictate the subject matter in her expert report. *See* Wade Decl.

20  ¶16, Ex. 14; Apatow Decl. ¶28, Ex. F; *id.* ¶30, Ex. G; *see also* Poudyal Decl. ¶¶18-25,

21  28, 38. Defendant now argues—without proof—that class members did not base their

22  purchasing decision on claims regarding arthritis. Apparently, Defendant's customers

23  only have arthritis when it is somehow helpful to Defendant in this litigation, and at

24  all other times members of the putative class are assumed to have purchased Supple at

25  the hefty $90 price tag simply because it is "shellfish free" or "tastes good."

26      Second, Defendant's argument that arthritis claims were immaterial to class

27  members fails because it is not based on any *evidence*. Indeed, Defendant's only

28  "evidence" to support this argument—the Gallup Study—is irrelevant, because the

study was conducted from October to November, 2006 (Phase I) and in March 2007 (Phase II).  *See* Declaration of Leonard Wood in Support of Defendant's Opposition to Class Certification ¶5.  Given that the putative class only includes California residents who purchased Supple between December 2, 2007 and the present, the Gallup Study *did not include a single class member in this action*.  The Gallup Study relied upon by Defendant cannot possibly provide any "evidence" regarding the class, and, thus, is entirely irrelevant.  *See L.G. Electronics U.S.A., Inc. v. Whirlpool Corp.,* 661 F. Supp. 2d 940, 952 (N.D. Ill. 2009) ("A survey that provides information about a wholly irrelevant universe of respondents is itself irrelevant"); *see also* Plaintiff's Objections and Motion to Strike the Declaration of Leonard Wood filed concurrently herewith.

In presenting the next two "factors" purportedly creating individualized issues of materiality, Defendant merely parrots the unpersuasive "satisfied" customer fiction and then points to the Gallup Study as somehow establishing materiality varies for Supple consumers depending upon each person's experience.  Def's Opp. at 17. Neither of these sources qualify as "evidence" that could in any way establish individual issues predominate (nor would either be relevant even if they did).

Finally, to the extent Defendant attempts to thwart materiality by attempting to highlight the "mixed messages" its advertising has purportedly presented over time and pointing to other purported reasons one might purchase Supple (i.e. weight loss, shellfish free, contains vitamins and minerals, tastes good), these arguments fail.[9]  As

[9] Courts routinely reject this type of "mixed messages" argument.  *See In re: POM Wonderful LLC*, No. 2:10-ml-02199-DDP-RZ, Dkt. 111 (C.D. Cal. Sept. 28, 2012) ("POM") (certifying class and rejecting defendant's "mixed messages" argument, despite the fact that defendant established the advertising at issue consisted of at least 596 unique advertisements—many of which contained no health claims—appearing in at least 9 different kinds of media, and plaintiffs only challenged a subset of statements allegedly making claims that POM Juice provides health benefits with respect to diseases such as prostate cancer, atherosclerosis, and high blood pressure); *Johnson*, 275 F.R.D. at 282 (finding "unpersuasive" Defendant's argument that "individual issues predominate because purchasers of YoPlus have been exposed to different mixes of packages and advertisements since General Mills has, over time,

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

REPLY ISO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

set forth in Plaintiff's motion, during pre-filing communications Defendant admitted it removed all references to weight loss "years ago" and that no such references would be used in the future.  The record evidence also demonstrates Defendant's infomercial and internet advertising is not focused on the fact that Supple is shellfish free, tastes good or contains vitamins and minerals, but, rather, on the efficacy and speed-of-action of the product.  *See* Wade Decl. ¶16, Ex. 14; *id.* ¶24, Ex. 22; Apatow Decl. ¶28, Ex. F; *id.* ¶30, Ex. G.  Defendant successfully disseminates a primary, uniform message to consumers: the fast-acting key ingredients in Supple are "clinically proven effective," and by taking the product, you can effectively treat arthritis.  Given this is only real reason Supple is sold, there can be no question this message is material.  *See Johns*, 280 F.R.D. at 558-59; *In re Ferrero Litig.*, 278 F.R.D. at 560; *In re: POM Womderful LLC*, Case No. 2:10-ml-02199-DDP-RZ, Dkt. No. 111, at 9-10 (C.D. Cal. Sept. 28, 2012).

### D.   Defendant's "Argument" That Reliance Cannot Be Presumed On A Class-wide Basis Fails

Defendant dedicates 3 pages of its opposition to setting forth precedent holding that, where class-wide reliance cannot be presumed, UCL and CLRA causes of action cannot be certified.  Def's Mot. at 19-21.  Surprisingly, however, Defendant then stops short of providing *any* analysis as to why class-wide reliance cannot be presumed here, failing to even analogize the current case to any of the precedent it cited.  *See, e.g.*, Def's Mot. at 21.  Instead, Defendant merely asserts it has provided the analytical framework to assess whether class-wide reliance may be presumed—an assessment that it apparently leaves for another day—and then criticizes Plaintiff for relying "on a series of distinguishable district court certification decisions."  Def.'s Mot. at 21

modified the packaging of YoPlus and the content and emphasis of its marketing materials"); *Ziesel v. Diamond Foods, Inc.*, 2011 WL 2221113 (N.D. Cal. June 7, 2011); *In re Ferrero Litig.*, 2011 WL 5557404.

REPLY ISO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

(citing Pl's Mot. at 14-15, n. 16). [10]

By not actually formulating an argument, Defendant essentially concedes a presumption of reliance is appropriate in this matter. Nevertheless, Plaintiff will address the distinguishable precedent upon which Defendant relies almost exclusively, namely *Mazza v. Amer. Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012). In *Mazza*, the court held that individual issues regarding reliance predominated where defendant engaged in a small scale advertising campaign and class members "were exposed to quite disparate information from various representatives of the defendant." *Id.* at 595-96. In contrast to *Mazza*, where "the limited scope of [Defendant's] advertising [made] it unreasonable to assume that all class members viewed it," *id.*, here, Defendant engaged in a large-scale, national advertising campaign which successfully drove sales of Supple through various direct-response channels (all of which require customers to view some sort of advertising prior to purchasing the product). Thus, whereas there were obvious issues of exposure to the allegedly false advertisements in *Mazza*, the same issues are not present here. Moreover, as set forth herein and in the motion for class certification, there can be little question that Defendant's pervasive, uniform false and misleading marketing message is material. *See* Pl's Mot. at 3-4, 21-23; *see also supra* II.C. Accordingly, because each class member had to view Defendant's advertising in order to purchase the product, a presumption of class-wide reliance arises. *See Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011); *Johnson*, 275 F.R.D. at 288-89; *Cole v. Asurion Corp.*, 267 F.R.D. 322, 326 (C.D. Cal. 2010); *Wiener*, 255 F.R.D. at 669.

---

[10] There are several glaring inaccuracies with this statement. First, it is unclear why Defendant cited to pages 14-15, and footnote 16 of Plaintiff's motion, because neither predominance nor a presumption of class-wide reliance are discussed on either of these pages or the footnote. Second, in arguing a presumption of class-wide reliance is appropriate in this matter, Plaintiff relies on the 9th Circuit's holding in *Stearns* (one of the cases cited in Defendant's opposition, *see* Pl's Mot. at 21-22), so Defendant's statement that Plaintiff relies solely on "distinguishable district court certification decisions" does not make sense.

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

## III.    **PLAINTIFF IS TYPICAL AND ADEQUATE**

Typicality requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class. *See* Fed. R. Civ. P. 23(a)(3).  Here, Plaintiff and class members alike were all exposed to the same alleged misrepresentations, and it cannot be reasonably disputed that they purchased the product for the same reason: namely, to treat arthritic joint pain.  Accordingly, typicality is established because Plaintiff and the proposed class assert exactly the same claim, arising from the same course of conduct—Defendant's false and misleading marketing campaign.  *See Johnson*, 275 F.R.D. at 287-88; *Johns*, 280 F.R.D. at 557; *In re Ferrero Litig.*, 278 F.R.D. at 558-59.

Contrary to Defendant's statement that Plaintiff's declaration "says nothing about statements that Supple's ingredient's are 'clinically proven effective,'" Def's Mot. at 22, Cabral's declaration plainly states she viewed Supple's infomercial and "relied upon the representations in the infomercial that Supple was *proven* to treat arthritis."  Declaration of Plaintiff Arlene Cabral in Support of Plaintiff's Motion for Class Certification ¶4 (emphasis added).  Moreover, Plaintiff's deposition testimony is entirely consistent with the statements in her declaration.  Indeed, Plaintiff testified that after viewing Supple's infomercial she believed that the product could rebuild cartilage, works "fast" (i.e. in 7 days), and was "proven" to treat arthritis.  Miller Decl. ¶5, Ex. C (Cabral Dep. at 50:1-18, 50:24 – 51:2, 52:24 – 53:10, 70:21 – 71:3, 72:23-24).  As set forth above, this is not a "unique" interpretation, as this is the exact, common sense interpretation of Defendant's advertising offered by Defendant's expert, Defendant's counsel and Magistrate Judge Parada.  *See supra* II.B.3.  Accordingly, Defendant's argument that Plaintiff is atypical and somehow inadequate because of a "unique" interpretation of the advertising message at issue here is meritless.

Defendant also asserts Plaintiff is not typical of putative class members because she only viewed the "2007 infomercial."  Def's Mot. at 22.  To the extent Defendant is

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

REPLY ISO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

arguing Plaintiff cannot represent consumers who viewed other Supple infomercials or internet advertising, Defendant's assertion is unavailing because the message conveyed never changed.[11]  *See* Wade Decl. ¶16, Ex. 14; *id.* ¶24, Ex. 22; Apatow Decl. ¶28, Ex. F; *id.* ¶30, Ex. G.  Defendant also points out the 2007 infomercial Plaintiff viewed was the *only* infomercial that aired from 2007 until mid 2011.  Apatow Decl. ¶¶ 28-30.  Thus, Plaintiff and most class members watched the same infomercial prior to purchase (and, as set forth above, the 2011 infomercial does not materially differ from the 2007 infomercial and is the only other version of the infomercial that has ever aired).

Defendant also argues Plaintiff is atypical because she did not share the "preconceived beliefs" about glucosamine and chondoroitin supposedly held by putative class members.  Def's Mot. at 23.  The first problem with this argument is that it relies upon the unwarranted assumption that putative class members had background information about glucosamine and chondroitin prior to purchasing Supple.  Defendant fails to present any evidence that even a single class member had "preconceived beliefs" about Supple's key ingredients (let alone that the assumption is applicable to the entire putative class), which, in and of itself, completely undermines Defendant's argument. Defendant's argument is that Plaintiff is atypical because she *relied solely on Defendant's false and misleading advertising in deciding whether to purchase Supple*.  Conspicuously missing from this argument is any authority where a plaintiff relies exclusively on a defendant's false and misleading advertising and, yet, is found to lack typicality because he or she did not possess background information from other sources about the product or ingredients at issue. This is not the law in California (or anywhere else for that matter).  Indeed, if a plaintiff were required to

---

[11] Defendant's argument regarding repeat customers (Def's Mot. at 22-23) does nothing to undermine typicality.  Indeed, Plaintiff's claims are typical of repeat customers because, in initially purchasing Supple, repeat customers (as with customers who purchased only once) were necessarily exposed to Defendant's false and misleading advertising.

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

21

show that they shared each putative class member's "preconceived beliefs" prior to purchasing the product—which could be based on any one of the virtually limitless sources of information about most (if not all) consumer goods—then typicality would never be met and no class would ever be certified.

In its final attempt to manufacture typicality issues, Defendant desperately blames Plaintiff's medical history as the reason Supple didn't cure her arthritis, misrepresents the reason Plaintiff sought to return the product,[12] and makes a baseless attack on her credibility.  Def's Mot. at 23-24.  These arguments are meritless.

Typicality has to do with whether the legal claims asserted by the named plaintiff are typical of the legal claims of absent class members, not whether there are minor variances in fact.  *See Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010).  As set forth at length in the class certification motion, Plaintiff's legal claims are identical to those of the putative class, as they all arise from the same advertising message, repeated across Defendant's various forms of marketing, to which all Supple purchasers were exposed.  *See* Pl's Mot. at 17-18.  Accordingly, typicality is easily satisfied in this matter.  *See Rodriguez*, 591 F.3d at 1124; *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Finally, with respect to adequacy under Rule 23(a)—which Defendant references in 2 sentences of the opposition, but doesn't actually present any real argument about (*see, e.g.*, Def's Mot. at 22, 24)—the requirement that Plaintiff be an adequate representative of the putative class has to do with whether there are disabling legal conflicts, not factual differences.  *See Ellis v. Costco Wholesale Corp.*, 657 F.3d

---

[12] Defendant represents to the Court that Plaintiff cancelled her auto-shipments because of the "price of the product."  Def's Opp. at 23.  However, Plaintiff clearly and unmistakably testified at her deposition that she sought to return Supple because it utterly failed to provide her with any of the advertised benefits.  Miller Decl. ¶5, Ex. C (Cabral Depo. at 55:2-56:11, 57:2-12, 58:10 – 59:10).  The only cost Plaintiff even referenced, was the immense shipping cost she would have had to pay to return the unused cans of Supple in order to get a refund.  *Id.* (Cabral Depo. 55:14-20).

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

REPLY ISO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

970, 984-85 (9th Cir. 2011).  Defendant has not asserted the existence of a legal conflict, nor could it, because no such conflict exists.  *See* Cabral Decl. at ¶9.  As such, the adequacy requirement is clearly met here.  *See Ellis*, 657 F.3d at 984-85; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1992).

## IV.   A CLASS ACTION IS THE SUPERIOR METHOD OF ADJUDICATING THE CLAIMS AT ISSUE HERE

Defendant argues that a class action is not superior here because it offers a refund.  *See* Def's Mot. at 24.  In support of this argument, Defendant cites three cases.  The common characteristic of these three cases is that, after closely scrutinizing the amount of potential damages claimed, the court found the out-of-court remedy (i.e. the refund program) to be substantially equivalent to what putative class members could expect to recover through a class action suit.[13]  *See Carter v. Webb*, 272 F.R.D. 489, 504 (C.D. Cal. 2011) (at time class action alleging defendant's clothing labels contained toxic chemicals that could cause adverse skin reactions was filed, defendant was already allowing consumers to obtain full refunds for the garments, even without a receipt); *In re Phenylpropanolime (PPA) Prods. Liab. Litig.*, 214 F.R.D. 614, 622 (W.D. Wash. 2003) ("*In re PPA*") (after FDA issued a health advisory and request for recall of all products containing PPA, defendant voluntarily recalled its products containing PPA and instituted a full refund program for purchasers of the recalled products); *In re Con-Agra Peanut Butter Prods. Liab. Litig.*, 251 F.R.D. 689, 700-01 (N.D. Ga. 2008) ("*In re Con-Agra*") (defendant recalled all of its peanut butter following an FDA warning that certain containers were contaminated with salmonella, and then immediately offered full refunds to purchasers of the recalled peanut butter).  The logical extension of this precedent is that, where putative

---

[13] In fact, by offering to reimburse consumers for out-of-pocket medical expenses for treating skin irritation from the tagless labels, the defendant in *Carter* actually offered more than could have been recovered in court.  *See Carter*, 272 F.R.D. at 504 (offering to reimburse consumers up to $250 for medical expenses without requiring any documentation).  This further distinguishes *Carter* from the current case.

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

1   class members stand to gain *more* through class action litigation than they could

2   receive through defendant's refund program, the court may find the class action

3   superior.  That said, there are several notable characteristics of Defendant's refund

4   program that warrant consideration and easily distinguish it from the aforementioned

5   cases.  First, unlike in *Carter*, *In re PPA*, and *In re Con-Agra*, where the defendant in

6   each case was offering a full refund to all class members *while the litigation was*

7   *ongoing*, here, Defendant offers a 60-day money back guarantee (running from the

8   date of purchase) that would no longer apply to virtually all putative class members.

9   As such, whereas the refund programs in *Carter*, *In re PPA*, and *In re Con-Agra*

10  presented a viable out-of-court remedy at the time of litigation, Defendant's claimed

11  refund program is illusory for putative class members outside the 60-day window.

12  Also, even when Defendant actually refunds a consumer, it only refunds the purchase

13  price of Supple, not the original shipping and handling.  *See* Apatow Decl. ¶44.

14  Along these lines, when a customer seeks a refund, Defendant actually requires them

15  to pay *additional* shipping and handling to return any unused product, an out-of-

16  pocket expense which is also not reimbursed.  Miller Decl. ¶5 , Ex. C (Cabral Depo. at

17  55:14-20).  These shipping and handling costs result from Defendant's unlawful and

18  fraudulent business practices and are recoverable in the instant litigation.

19  Additionally, because Defendant targets disabled consumers, it is possible for Plaintiff

20  and putative class members to recover statutory penalties (up to $5,000 per class

21  member) under the CLRA.  *See* Pl's Mot. at 24.  Given that the amount of potential

22  damages putative class members stand to be awarded far outstrips the amount of

23  Defendant's refund (which is essentially irrelevant because it is illusory as to virtually

24  all class members), a class action may clearly be found to be superior, even under the

25  precedent Defendant cites.

26         Defendant's argument that, due to the absence of consumer complaints,

27  superiority is not satisfied because there is no "concern that there will be a multiplicity

28  o [sic] suits challenging the same conduct" misses the mark.  Def's Mot. at 25.  As the

Ninth Circuit has made clear, the absence of a threat of multiplicity and risk of inconsistent judgments actually *favors* class certification. *See Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1191 (9th Cir. 2001).

Finally, Defendant's claim that Plaintiff intends to put the entire glucosamine and chondroitin industry on trial is not only false, it is entirely irrelevant to the superiority analysis.

As set forth in Plaintiff's motion, all the factors courts use to determine whether a class action is the superior method of adjudication clearly favor certification in this matter. *See* Pl's Mot. at 24-25. Accordingly, where, as here, damages suffered by each putative class member are relatively small (and would easily be dwarfed by the cost of litigating on an individual basis), there is no "threat of a multiplicity" of suits or "risk of inconsistent adjudications," and manageability issues are not likely to arise, a class action is superior and certification is warranted. *See Zinser*, 253 F.3d at 1191-92; *Hanlon*, 150 F.3d at 1023; *Johnson*, 275 F.RD. at 289.

## V.   **CONCLUSION**

For the reasons stated herein, Plaintiff, on behalf of herself and the proposed class, requests the Court issue an order granting the motion for class certification.

DATED: November 19, 2012        Attorneys for Plaintiff,
Arlene Cabral and the Proposed Class


By:  /s/ Gillian L. Wade
      MILSTEIN ADELMAN, LLP
      Gillian L. Wade
      M. Isaac Miller

Milstein Adelman, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405