1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARLEEN CABRAL, et al., | CASE NO. ED 12-00085-MWF (OPx) |
| Plaintiffs, | **ORDER GRANTING PLAINTIFF CABRAL'S MOTION FOR CLASS CERTIFICATION [35]** |
| vs. | |
| SUPPLE, LLC, et al., | |
| Defendants. | |

This matter is before the Court on the Motion for Class Certification (the "Motion") filed by Plaintiff Arleen Cabral.  (Docket No. 35).  The Court has read and considered the papers filed on this Motion and held a hearing on December 3, 2012.  (*See* Docket No. 90).  For the reasons stated below, the Motion is GRANTED.

## **BACKGROUND**

As this Court twice has discussed on the motions to dismiss filed by Defendant Supple, LLC ("Supple"), this action relates to Supple's sales, marketing and distribution of the Supple Beverage (the "Beverage").  (*See* Docket Nos. 29, 49).  The gravamen of Cabral's First Amended Complaint ("FAC" (Docket No. 33))

1

1    is that Supple claims the Beverage's key ingredients – *i.e.*, glucosamine

2    hydrochloride and chondroitin sulfate – are clinically proven effective, produce

3    evidence-based solutions for joint problems, and provide fast relief from joint

4    suffering caused by ailments such as arthritis.  However, Cabral alleges that a series

5    of clinical trials demonstrate that the combination of these ingredients is no more

6    effective than placebo.

7         Cabral alleges that she purchased the Beverage after viewing Supple's

8    infomercial in 2009.  The FAC alleges claims for relief for violation of the

9    following statutes:  (1) California's Unfair Competition Law ("UCL"), Cal. Bus. &

10   Prof. Code § 17200 *et seq.*; (2) California's False Advertising Law ("FAL"), Cal.

11   Bus. & Prof. Code § 17500 *et seq.*; and (3) California's Consumer Legal Remedies

12   Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*

13        On this Motion, Cabral seeks to certify the following statewide class:  All

14   persons residing in the State of California who purchased Supple for personal use

15   and not for resale since December 2, 2007.

16                         **LEGAL STANDARD**

17        The party seeking class certification bears the burden of showing that each of

18   the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of

19   the requirements of Rule 23(b) are met.  *See Hanon v. Dataprods. Corp.*, 976 F.2d

20   497, 508-09 (9th Cir. 1992).  Rule 23(a) sets forth four prerequisites for class

21   certification, commonly referred to as numerosity, commonality, typicality and

22   adequacy of representation.  *Hanon*, 976 F.2d at 508.

23        "In determining the propriety of a class action, the question is not whether the

24   plaintiff has stated a cause of action or will prevail on the merits, but rather whether

25   the requirements of Rule 23 are met."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156,

26   178, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974) (internal quotation and citations

27   omitted).  Therefore, the Court considers the merits of the underlying claims to the

28   extent that the merits overlap with the Rule 23(a) analysis but does not conduct a

                                    2

1  "mini-trial" or determine at this stage whether Cabral actually could prevail. *Ellis v.*

2  *Costco Wholesale Corp.*, 657 F.3d 970, 981, 983 n.8 (9th Cir. 2011).

3      Cabral moves for certification pursuant to Rule 23(b)(3).  Under Rule

4  23(b)(3), a plaintiff seeking to certify a class must show that questions of law or fact

5  common to the members of the class "predominate over any questions affecting only

6  individual members, and that a class action is superior to other available methods for

7  the fair and efficient adjudication of the controversy." *Id.*

8                              **DISCUSSION**

9      As a preliminary matter, Supple does not contest numerosity.  Supple's

10  argument against commonality is intertwined with its argument as to predominance

11  – particularly on the question whether Supple's marketing and advertising

12  constitutes a "uniform message."  While Supple makes passing arguments as to

13  typicality and adequacy (and superiority), the briefing and the hearing largely

14  focused on predominance.  For this reason, the Court turns first to this question.

15  (The Court also notes that in their briefing and at the hearing the parties did not

16  differentiate among the three statutory bases for relief in the FAC.)

17  **Predominance (Rule 23(b)(3))**

18      As noted above (and in the Court's prior motion to dismiss orders), the FAC

19  alleges that Supple promoted the Beverage as clinically proven effective in treating

20  joint pain such as that caused by arthritis.  According to the FAC, this claim is false

21  and/or misleading.  Supple advances four arguments as to why this claim does not

22  satisfy Rule 23(b)(3).

23      Supple argues that common questions of fact do not predominate because (1)

24  the Beverage is effective and class members therefore were not misled; (2) Cabral

25  has not demonstrated that class members were exposed to the advertisement on

26  which she bases her claim; (3) materiality varies among class members; and (4)

27  reliance cannot be presumed on a class-wide basis.

28

**(1)**     Supple is correct that a "consumer protection suit will not lie where a plaintiff actually receives the 'benefit of the bargain.'" *In re Actimmune Mktg. Litig.*, No. C 08-02376 MHP, 2010 WL 3463491, at *9 n.2 (N.D. Cal. Sept. 1, 2010). But this is a merits question as much as a predominance question. Indeed, *In re Actimmune*, on which Supple relies, is a decision on a motion to dismiss and not for class certification. *See id.*

Nevertheless, the thrust of Supple's opposition to the Motion is that the "evidence here shows that the putative class includes a substantial number of satisfied customers, which demonstrates that individual issues predominate." (Opp. at 9). This argument rests only on the fact, which Cabral concedes, that "most customers purchase[d] the [Beverage] multiple times." (*See* Opp. at 11; Mot. at 9).

Supple cites a raft of cases in which class certification has been denied because the evidence demonstrated that absent class members benefitted from the product at issue or otherwise suffered no injury and lacked standing to sue. *See Moheb v. Nutramax Labs.*, CV 12-3633-JFW (JCx), slip op. at 3-4 (Sept. 4, 2012) ("In this case, the Class will include members who derived benefit from Cosamin and are satisfied users of the product. However, '[s]uch members have no injury and no standing to sue.'" (citation omitted)); *Hovsepian v. Apple, Inc.*, No. 08-5788 JF (PVT), 2009 WL 5069144, at *6 (N.D. Cal. Dec. 17, 2009) ("[T]he class is not ascertainable because it includes members who have not experienced any problems with their iMac display screens. Such members have no injury and no standing to sue."); *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1152 (N.D. Cal. 2010) ("Defendants argue that because the class does not exclude persons who already have received refunds or replacement parts or who have not suffered any damages at all, it is not ascertainable. The Court agrees."); *Bishop v. Saab Auto. A.B.*, No. CV 95-0721 JGD(JRX), 1996 WL 33150020, at *5 (C.D. Cal. Feb. 16, 1996) ("The courts have refused to certify class actions based on similar 'tendency to fail' theories because the purported class includes members who have suffered no

injury and therefore lack standing to sue." (citations omitted)); *Akkerman v. Mecta Corp.*, 152 Cal. App. 4th 1094, 1101, 62 Cal. Rptr. 3d 39 (2007) (class definition "would require a windfall award of restitution to all who received [therapy at issue] even if the procedures were successful and beneficial"); *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 133-34, 103 Cal. Rptr. 3d 83 (2009) ("evidence indicated that Vioxx did not present 'an increased risk of death' . . . for all patients"); *Konik v. Time Warner Cable*, No. CV 07-763 SVW (RZx), 2010 WL 8471923, at *9 (C.D. Cal. Nov. 24, 2010) ("The evidence presented to the Court establishes that a large component of the proposed class did not experience any raises in price or deprivations in service. . . . Plaintiffs do not dispute the substance of this evidence."); *Campion v. Old Republic Home Prot. Co.*, 272 F.R.D. 517, 533 (S.D. Cal. 2011) ("A determination as to whether class members were harmed . . . requires review of the particular circumstances pertaining to the handling of each class member's claim to assess whether the claim was approved or denied and, if it was denied, whether the denial was legitimate."); *Faralli v. Hair Today, Gone Tomorrow*, No. 1:06 CV 504, 2007 WL 120664, at *8 (N.D. Ohio Jan. 10, 2007) (reasoning that "the end result of the treatment is critical to determining which customers suffered damage as a result of the false representation. That is, those who suffered damage would be those who relied on the statement that the hair would be permanently reduced or eliminated, but in fact it was not.").

These cases are distinguishable both factually and legally. ***Factually***, the record does not demonstrate that there are a "substantial number of satisfied customers." The fact that most customers purchased the Beverage multiple times arguably does give rise to an inference that at least some of these customers were satisfied and/or that the Beverage was in some sense "effective." But this (arguable) inference does not threaten class ascertainability or demonstrate that most or all potential class members lack of standing. *See, e.g.*, *Joseph v. Gen. Motors Corp.*, 109 F.R.D. 635 (D. Colo. 1986) ("[T]he fact that the class may initially include

persons who have not had difficulties with the [relevant product] or who do not wish to have these purported problems remedied is not important at this stage of the litigation, unless, of course, it is shown that most, if not all, of the potential class members have no claims to be asserted by the class representatives." (citations omitted) (cited in 6 William B. Rubenstein, Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 21:32 n.3 (4th ed. 2012)); *Galvan v. KDI Distrib. Inc.*, No. SACV 08-0999-JVS (ANx), 2011 WL 5116585, at *5 (C.D. Cal. Oct. 25, 2011) ("In this case, the class definition may include individuals who did not perceive that they were short changed by the minutes provided on their calling cards, individuals who do not wish to pursue action, and individuals that have inadequate proof to go forward with the class. However, . . . these ascertainability issues are not fatal to class certification and may be addressed later in the litigation.").

   **Legally**, even accepting the premise that some repeat customers are satisfied customers (or at the very least that there are individual issues as to why repeat customers purchased the Beverage multiple times), common issues of fact and law still predominate. Class-wide harm nevertheless can be established through common proof. *Cf., e.g.*, *Campion*, 272 F.R.D. 517, 532 ("Plaintiff's efforts to certify the class break down under a causation analysis, as it is apparent that the causal link between Defendant's alleged unlawful business practices and any harm suffered by class members can not be established on a class-wide basis.").

   In this regard, *Johnson v. General Mills, Inc.*, 275 F.R.D. 282 (C.D. Cal. 2011), is instructive:

> common issues of great importance to this litigation are also subject to classwide litigation and common proof, further evidencing that common issues predominate. Most importantly, General Mills could defeat the claims of the entire class by proving that YoPlus promotes digestive health in the manner that General Mills allegedly represented. The digestive health benefit of YoPlus, or the lack thereof, is a common issue that is particularly appropriate for classwide resolution because it will

6

turn on complex and expensive scientific evidence and expert testimony.
. . .

*Id.* at 289.

The truth or falsity of Supple's advertising will be determined on the basis of common proof – *i.e.*, scientific evidence that the Beverage is "clinically proven effective" (or not) – rather than on the question whether repeat customers were satisfied or received multiple shipments of the Beverage because of automatic renewals.

(2)     Supple argues that its advertising does not amount to the "uniform message" described above – *i.e.*, that the Beverage is clinically proven effective in treating joint pain.  But, as in other consumer protection cases, the fact that Supple may have marketed the Beverage through different statements in order to convey this message is not dispositive.  *See, e.g.*, *Johnson*, 275 F.R.D. 282, 289 ("[T]he common issue that predominates is whether General Mills' packaging and marketing communicated a persistent and material message that YoPlus promotes digestive health."); *cf. Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 595 (9th Cir. 2012) (stating that class cannot be certified where "it is likely that many class members were never exposed to the allegedly misleading advertisements").

Cabral has introduced evidence that Supple's infomercial states, for example: "If you have arthritis, joint pain, back pain, kne[e] pain, this is a product you absolutely have to try"; "Our glucosamine is clinically proven to rebuild damage[d] cartilage cells"; "It's our chondroitin that's clinically proven effective to reduce joint space narrowing, that's clinically proven to reduce swelling and inflammation, and that protects your joints."  (Wade Decl. Ex. 14 (Docket No. 36)).  Cabral also has introduced evidence of comparable statements on Supple's website, for example:  "Clinically Proven Effective and Safe"; "[C]ompletely relieve the symptoms of arthritis."  (*Id.* at Ex. 22).

1    In addition, the record evidence indicates that from December 1, 2007, to
2    November 20, 2011, approximately $8.9 million of the revenue from Supple's sale
3    of the Beverage was generated from direct telephone sales (Supple's infomercial
4    includes "1-800" telephone numbers for viewers then to purchase the Beverage).
5    (*Id.* at Ex. 2).  The remaining $1.4 million in revenue was generated from online
6    sales.  (*Id.*)  Supple did not sell to retail merchandisers.

7    Consequently, class members purchased the Beverage either over the
8    telephone after viewing the Supple infomercial or from the Supple website.  The
9    Beverage label also appeared on the Supple website.  (*See, e.g.*, *id.* at Ex. 23, 24).
10   The record demonstrates that class members necessarily would have been exposed
11   to Supple's advertising before purchasing the Beverage.

12   Clearly, the statements in the infomercial differ in some respects from those
13   on the website (or even among different iterations of the infomercial).  But a false or
14   misleading advertising campaign need not "consist of a specifically-worded false
15   statement repeated to each and every [member] of the plaintiff class."  *In re First*
16   *Alliance Mortgage Co.*, 471 F.3d 977, 992 (9th Cir. 2006).  "The class action
17   mechanism would be impotent if a defendant could escape much of his potential
18   liability for fraud by simply altering the wording or format of his misrepresentations
19   across the class of victims."  *Id.*; *Johns v. Bayer Corp.*, 280 F.R.D. 551, 558 (S.D.
20   Cal. 2012) ("[W]hen plaintiffs are exposed to a common advertising campaign,
21   common issues predominate.").

22   **(3)**     Supple next argues that common issues do not predominate because the
23   alleged misrepresentations may not have been material to all class members.
24   However, "[u]nder California law, a misrepresentation is material 'if a reasonable
25   man would attach importance to its existence or nonexistence in determining his
26   choice of action.'  Materiality is thus an objective standard that may be subject to
27   common proof."  *In re Apple, AT & T iPad Unlimited Data Plan Litig.*, No. C-10-
28   02553 RMW, 2012 WL 2428248, at *5 (N.D. Cal. June 26, 2012) (citation omitted);

*see also, e.g.*, *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) ("Appellants' claims under these California statutes are governed by the 'reasonable consumer' test.").

Importantly, "at this stage in the litigation, the issue is not whether the alleged misrepresentations were in fact material.  The proper inquiry for class certification purposes is whether plaintiff can use common proof to prove whether a misrepresentation or nondisclosure is material."  *Krueger v. Wyeth, Inc.*, Civil No. 03CV2496 JAH (AJB), 2011 WL 8971449, at *6 (S.D. Cal. Mar. 30, 2011) (distinguishing *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 103 Cal. Rptr. 3d 83 (2009)).

Under the facts of this case, the question is whether a reasonable person contemplating purchase of the Beverage would attach importance to Supple's alleged misrepresentation – *i.e.*, that the Beverage is clinically proven effective for the treatment of joint pain.  *See id.* at *4 ("Under the facts of this case the question is:  would a reasonable person contemplating purchase of Wyeth's hormone therapy drugs attach importance to the nondisclosed fact that the drug increases the risk for breast cancer, heart disease, Alzheimers disease, and dementia . . . .").  That answer is subject to common proof.

Supple nevertheless asks the Court to weigh whether the alleged misrepresentation, in fact, would be material to certain class members.  Common sense dictates that the alleged misrepresentation (practically speaking, that the Beverage would do what it was advertised to do) would be material to not only the reasonable purchaser but every purchaser.  *See, e.g.*, *In re Yasmin and Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, No. 3:09-md-02100-DRH-PMF, 2012 WL 865041, at *10 (S.D. Ill. Mar. 13 2012) (noting that the "drugs at issue" in a related case "purportedly had the opposite effect of their advertised benefits" and that "[r]epresentations or omissions of this nature would clearly be material to putative class members").

9

**(4)**      According to the Ninth Circuit, a "presumption of reliance does not arise when class members 'were exposed to quite disparate information from various representatives of the defendant.'"  *Mazza*, 666 F.3d at 596 (citation omitted) ("Here the limited scope of that advertising makes it unreasonable to assume that all class members viewed it.").

However, an inference of reliance arises as to the entire class where material misrepresentations have been made to the entire class.  *See Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011).  Because the Beverage was sold only over the telephone and on Supple's website, class members necessarily were exposed to the alleged misrepresentation in Supple's infomercial or on its website.  While the individual statements or iterations of the alleged misrepresentation may have differed depending on the specific infomercial or website page, the message was the same.  Based on these facts, a presumption of reliance is warranted in this case.

Accordingly, Cabral has demonstrated that common issues of fact and law predominate for purposes of Rule 23(b)(3) and established commonality under Rule 23(a).

**Superiority (Rule 23(b)(3))**

Similarly, Cabral has established superiority under Rule 23(b)(3).  Supple argues that a class action is not superior where, as here, the defendant offers refunds to dissatisfied customers.  But the record evidence demonstrates that during the putative class period Supple has offered at most a sixty-day money-back guarantee and that this does not include processing and handling or shipping.  (*See* Apatow Decl. ¶ 44 (Docket No. 60)).  Given these limitations, Supple is not offering the "very relief" sought by means of the class action.  (*See* Opp. at 24).

Supple also argues that an apparent lack of multiplicity of suits undercuts superiority.  But such a lack of multiplicity does not necessarily weigh against class certification.  *See, e.g.*, *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1191

(9th Cir. 2001) ("If the court finds that several other actions already are pending and that a clear threat of multiplicity and a risk of inconsistent adjudications actually exist, a class action may not be appropriate . . . ." (citation omitted)).  Supple's arguments are unavailing.

**Rule 23(a)**

*Typicality*

Likewise, Supple's argument as to typicality fails.  The typicality requirement is a permissive standard.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Id.* at 1020.  Again, Cabral purchased the Beverage in reliance on Supple's alleged misrepresentation as to its effectiveness.  Cabral's claim is "reasonably co-extensive" with those of absent class members who purchased the Beverage after necessarily being exposed to Supple's advertising.  The Court is not persuaded by Supple's arguments that the specific statements on which Cabral allegedly relied, her specific arthritic condition and/or her discontinued use of the Beverage make her claim atypical.

*Adequacy*

Supple's adequacy argument appears to overlap with its argument as to typicality.  But "[t]o determine whether named plaintiffs will adequately represent a class, courts must resolve two questions:  '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"  *Ellis*, 657 F.3d at 985 (citing *Hanlon*, 150 F.3d at 1020).  "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees."  *Id.*  Supple has made no showing as to either of these questions.

11

1   Therefore, Cabral has established that she and her counsel meet the

2   prerequisites of Rule 23(a).

3   **The Subsequent Briefing**

4   After the hearing, on December 10, 2012, Supple filed a Statement of Recent

5   Decision in Support of Opposition to Class Certification (the "Statement").  (Docket

6   No. 93).  Supple's Statement attached the slip opinion in *Moheb* (cited above) and

7   argued that the court denied class certification in that case because "some of the

8   putative class members relied on the recommendations of doctors or on other

9   outside information in deciding to purchase the product," because the "evidence

10   showed that the product worked for at least some consumers," and "because many

11   customers were satisfied with their purchases."  (Statement at 1).

12   On December 11, 2012, Cabral filed a Response to the Statement.  (Docket

13   No. 95).  Cabral argued that the product at issue in *Moheb* "was sold primarily at

14   retail outlets, which led to issues of class-wide exposure," and that "unlike in *Moheb*

15   there can be little question that the falsity of [Supple]'s uniform marketing message .

16   . . can be determined by classwide proof, namely, complex and expensive scientific

17   evidence."  (Response at 1-2).

18   While not binding here, the Court carefully has read and considered the

19   *Moheb* decision.  The Court notes that *Moheb* also involved a

20   glucosamine/chondroitin supplement.  *Moheb*, slip op. at 1.  However, *Moheb* is

21   distinguishable from this case.  ***First***, as discussed above, issues of standing and

22   ascertainability do not preclude class certification here.  *But see id.* at 3-4  ***Second***,

23   in *Moheb*, "some of the members of the Class never saw or relied upon Defendant's

24   representation that [the relevant product] has been proven to reduce joint pain."  *Id.*

25   at 5; *see also id.* at 8.  Here, as discussed above, the record demonstrates that class

26   members necessarily would have been exposed to Supple's advertising before

27   purchasing the Beverage, which also warrants a presumption of reliance.  ***Third***,

28   unlike in *Moheb*, Supple does not argue on this Motion that "[s]cientific data

12

1  suggests that [the Beverage] works for some, but may not work as well for others."

2  *Id.* at 5; *see also id.* at 8.

3      ***Finally***, the Court declines to rule that Cabral is an inadequate class

4  representative based on either her specific arthritic condition or her discontinued use

5  of the Beverage, notwithstanding the *Moheb* court's conclusion with respect to the

6  plaintiff in that case.  In *Moheb*, the court concluded that the plaintiff "would not be

7  an adequate representative because she had extremely limited experience" with the

8  relevant product, and that she "would not be an adequate representative for those

9  members of the Class that did derive benefits" from the product, "those that used [it]

10  for cartilage protection, or those who purchased [it] for their pets."  *See id.* at 6.

11  Furthermore, the court noted that, "unlike other members of the Class who continue

12  to use [the product], she does not have any risk of future harm from the product."

13  *Id.*  The court also found that the plaintiff "became class representative in this action

14  through her long-time friendship with the mother of one of her counsel, and that

15  counsel had been researching the possibility of a class action with respect to [the

16  product] prior to [the p]laintiff becoming a client."  *Id.* ("While Plaintiff denies that

17  a conflict exists, it is the appearance of a conflict that is inescapable.").  Therefore,

18  the ruling as to adequacy in *Moheb* relied on a different factual record.

19  **CONCLUSION**

20      Accordingly, the Motion (Docket No. 35) is GRANTED.

21      The Court hereby sets a Scheduling Conference for **March 18, 2013, at 11:00**

22  **a.m.** (*See* Docket No. 99).

23      IT IS SO ORDERED.

24      DATED:  February 14, 2013.

25

26  _____

27  MICHAEL W. FITZGERALD
    United States District Judge

28

13